219 P.3d 1170

**STATE of Hawai'i, Petitioner/Plaintiff–Appellee,**

v.

**Carson Lalepa WHEELER, Respondent/Defendant–Appellant.**

**No. 29149.**

Supreme Court of Hawai'i.

Nov. 17, 2009.

issue before us is whether Petitioner was prevented from talking to his counsel during a *routine* recess.

Donn Fudo, Deputy Prosecuting Attorney, for petitioner/plaintiff-appellee.

Timothy I. Mac Master, for respondent/defendant-appellant Carson Lalepa Wheeler.

MOON, C.J., NAKAYAMA, ACOBA, DUFFY, and RECKTENWALD, JJ.

Opinion of the Court by
RECKTENWALD, J.

Respondent/Defendant–Appellant Carson Lalepa Wheeler was convicted of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawai'i Revised Statutes (HRS) § 291E–61(a)(1) and (b)(1)(2007).[1] Prior to the start of trial,

---

1. HRS § 291E–61 (2007) provides, in pertinent part, as follows:

Wheeler moved to have the District Court of the First Circuit (district court) [2] dismiss the oral charge, on the grounds that it did not allege all of the material elements of the offense. The district court denied that motion.

Wheeler appealed his conviction to the Intermediate Court of Appeals (ICA). The ICA concluded in its March 6, 2009 Summary Disposition Order (SDO) that the district court erred in denying the motion to dismiss, because the charge failed to allege that Wheeler operated a vehicle upon a public way, street, road, or highway at the time of the offense. *State v. Wheeler*, No. 29149, 2009 WL 568319, at *1 (Haw.App. March 6, 2009). The ICA accordingly vacated and remanded to the district court with instructions to dismiss without prejudice. *Id.*

The State of Hawai‘i (State) petitioned this court for a writ of certiorari to review the ICA's judgment. In its application, the State contends that the oral charge was sufficient because it alleged that Wheeler had "operat[ed]" the vehicle, and "operate" is defined in HRS § 291E–1 (2007) as operating a vehicle on a public way, street, road, or highway.

The State also argues that there is an inconsistency between the ICA's SDO and this court's decisions in *State v. Ruggiero*, 114 Hawai‘i 227, 160 P.3d 703 (2007) and *State v. Kekuewa*, 114 Hawai‘i 411, 163 P.3d 1148 (2007).

For the reasons set forth below, we conclude that the operation of the vehicle on a public way, street, road, or highway is an essential element of the offense of OVUII, and that the oral charge did not adequately allege that element of the offense. Moreover, this outcome does not conflict with this court's decisions in *Ruggiero* and *Kekuewa*. Accordingly, we affirm the ICA's judgment.

## I. Background

### A. Oral Charge/Motion to Dismiss

On March 18, 2008, the deputy prosecuting attorney ("prosecution" or "State") orally charged [3] Wheeler with OVUII, in violation of HRS § 291E–61(a)(1), as follows:

[Wheeler], on or about May 31st, 2007, in the City and County of Honolulu, State of Hawaii, you did operate or assume actual physical control of a motor vehicle while

> § 291E–61 **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> (2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
> (3) With .08 or more grams of alcohol per two hundred ten liters of breath; or
> (4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
> (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
> (1) Except as provided in [paragraph] (2), for the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):
> (A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;

> (B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in substance abuse treatment programs;
> (C) Any one or more of the following:
> (i) Seventy-two hours of community service work;
> (ii) Not less than forty-eight hours and not more than five days of imprisonment; or
> (iii) A fine of not less than $150 but not more than $1,000; and
> (D) A surcharge of $25 to be deposited into the neurotrauma special fund[.]
> . . . .

2. The Honorable Gerald H. Kibe presided.

3. Prior to July 1, 2008, an oral charge was sufficient and the State was under no obligation to set forth the charge in a written complaint. *See* Hawai‘i Rules of Penal Procedure (HRPP) Rules 5(b)(1) and 7(d) (2008) (noting that a written complaint in OVUII cases would be required).

under the influence of alcohol in amounts sufficient to impair your normal mental faculties and your ability to care for yourself and guard against casualty, and thereby committing the offense of Operating a Vehicle Under the Influence of Intoxicants in violation of 291E–61(a)(1) of the Hawaii Revised Statutes.

This being your first offense without any prior convictions for either 291E–61 and/or 291E ... in the last five years....

When the prosecution asked Wheeler whether he understood the charge, Wheeler's counsel indicated that he and Wheeler did not understand the charge because "[t]he prosecution may be using certain terms of art, legally defined terms of art, that we don't understand" and asked to have the charge stated using "common vernacular" so that they could understand "each material element of the offense[.]" In response, the prosecution argued that the "State has just enunciated each and every element of the charge." Thereafter, Wheeler moved "to dismiss on the grounds [that the charge] fails to state [an] offense." The district court denied the motion, and asked Wheeler if he wished to have the State "paraphrase for explanatory purposes[.]"

Wheeler's counsel indicated that he was not asking for the prosecution to paraphrase the charge, and reiterated that he was asking that the charge be stated using "common vernacular" because Wheeler would not be aware of the "statutory definition of certain terms of art that the prosecution may or may not have been using in reading the charge."

In response, the court stated as follows:

I don't know what you're talking about ... when you say common language. I'm at a complete loss as to what you're referring to. Can you be more specific?

Wheeler's counsel declined on the grounds that he "d[idn't] wanna give the prosecution any[ ]more hints than [he'd] already given them" because "[his] job isn't to come in here and teach 'em how to charge a case." The court then stated as follows:

No, but, you know, I think they've done the legal requisite by tracking the statute. The statute sets forth the legal parameters and all elements and the prosecutor has done that.

The court then asked Wheeler if he understood the charge, and Wheeler replied "no," because "everyone is talking," so the court had the prosecution restate the charge slowly. When the State asked Wheeler if he understood the charge, Wheeler's counsel instructed him to "[s]ay no." The court asked if the prosecution spoke "too fast" to which Wheeler's counsel responded

I'll speak on [Wheeler's] behalf. It's our belief the prosecution is attempting to use a term of art, or they may or may not be, and we can't tell 'em, we don't wanna speculate a particular term of art which is specifically statutorily defined in Chapter 291, and that they may be attempting to substitute the use of such a term where actually specifying in common language that someone like [Wheeler] can understand. So, bottom line is just put ditto marks under all of our prior objections. We move to dismiss the charge at this point, fails to state an offense.

The court responded that it was unable to discern the nature of the objection and indicated that "without any further specification, I will take the position that [Wheeler] does understand what he's being charged with and enter a plea of not guilty and ... go forward with trial." Wheeler's counsel's "final hint" to the prosecution and the court was that his objection related to a "verb," but the court said it was still unable to discern the nature of the objection, and proceeded with a nonjury trial.

**B. Trial/Sentencing**

Honolulu Police Department (HPD) Officer Jeremy Franks testified that on May 31, 2007 he was conducting speed enforcement monitoring on Moanalua Freeway. He observed a white van approaching him driving faster than the other traffic in the area. Franks aimed his "LTI 2020 Laser"[4] at the

---

4. Officer Franks testified that the LTI 2020 is used to measure speed, that he received four

hours of training in the use of the device, and that prior to his shift on May 31, 2007, he con-

license plate of the vehicle, and the screen displayed a result of seventy-one miles per hour. Officer Franks testified that the speed limit on Moanalua Freeway is fifty miles per hour. Officer Franks got on his motorcycle and followed the van onto the H–1 Freeway and activated his lights. The vehicle came to a stop by the Aiea Heights overpass.

Officer Franks informed Wheeler, the driver, that he had been speeding and asked for Wheeler's license, registration, and insurance. According to Officer Franks, Wheeler at first "kine'a ignored [him]," but eventually provided the requested items. Officer Franks testified that during that time he observed that Wheeler "had slurred speech, [a] strong odor of alcohol coming from his breath as he spoke to [him], [and] red and glassy eyes." Officer Franks requested that Wheeler participate in a field sobriety test, and Wheeler agreed.

Wheeler staggered a little bit as he exited the vehicle. Officer Franks then explained the instructions of the field sobriety test. Before administering the test, Officer Franks asked Wheeler a list of medical questions which included whether Wheeler was taking any medication, was under the care of a doctor, and if he was a diabetic or an epileptic. Although Wheeler indicated that he was a diabetic, Officer Franks testified that Wheeler did not show any signs that would indicate that Wheeler was going to faint or go into a coma during his contact with him.

Officer Franks then provided instructions and a demonstration of the "walk and turn" test before administering it. The results indicated that Wheeler was impaired because "he was unable to follow instructions and unable to perform the field sobriety test as instructed." Officer Franks then administered the "one-leg stand test." Officer Franks testified that Wheeler "did not per-

form the [one-leg stand] test as instructed" and "did not follow instructions."

Officer Franks concluded that Wheeler was impaired and placed him under arrest. Officer Franks testified that he smelled a "strong odor of alcoholic-type beverage" "[f]rom [his] first contact" with Wheeler to "after placing [him] under arrest." Another officer took Wheeler to the Pearl City Police Station.

HPD Officer Boyce Sugai testified that he observed Wheeler at the Pearl City Police Station with "red, watery eyes" and a "very strong odor of alcohol on his breath." Officer Sugai read Wheeler a one-page implied consent form (HPD–396K).[5] The form offered Wheeler the opportunity to take a breath test or blood test, or refuse to take either test. Wheeler initialed indicating that he refused to take either test. Officer Sugai then read Wheeler an additional four-page implied consent form (HPD–396B1–B4). Wheeler initially agreed to take both a breath and blood test, but later changed his mind and refused to take either.

At the conclusion of the State's case-in-chief, Wheeler's counsel moved for judgment of acquittal and asked the court to dismiss the case "based on the fact that the case as charged fails to state an offense." In support of his motion, Wheeler's counsel argued that the "oral charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding." Wheeler's counsel argued that the charge was defective because the State failed to allege that the offense had taken place on a "public road, street or highway." Wheeler's counsel explained that the word "operate" in the common vernacular means "to operate whether you're doing it on private property or public property," but that under HRS chapter 291E the term has a special statutory definition

---

ducted four tests on the laser to ensure that it was working properly.

5. The HPD–396K form read in part:

**Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:**

1. ____ Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the person[']s breath, blood, or urine as applicable.

. . . .

Wheeler initialed in the blank space provided.

which only applies to "operat[ing] [a motor vehicle] on a public[ ] road, street or highway." Wheeler's counsel argued that the prosecution was required to include that language in the charge.

The district court denied the motion, ruling that the charge was sufficient because it contained a "recitation of the statutory language[.]" Wheeler's counsel rested without presenting any evidence.

The district court found Wheeler guilty as charged, stating that:

> [O]n May 31, 2007, in the evening hours, in violation of HRS Section 291E–61(a)(1), such that you did operate your vehicle while under the influence of alcohol in an amount that was sufficient to impair your normal faculties or ability to care for yourself and guard against casualty. Therefore, I find that you are guilty as charged.

The court imposed a sentence of a minimum of fourteen hours of alcohol abuse rehabilitation, a $250 fine, a $25 neurotrauma assessment, a $107 driver education assessment, a $30 criminal injuries compensation fund assessment, substance abuse assessment and any treatment deemed necessary thereby.[6] The court suspended execution of the sentence for thirty days pending the submission of a notice of appeal. The court filed a Notice of Entry of Judgment and/or Order and Plea/Judgment on April 1, 2008. Wheeler timely filed a Notice of Appeal on April 28, 2008.

## C. ICA Appeal

In his September 5, 2009 Opening Brief, Wheeler argued that the district court erred when it (1) denied his motion to dismiss because the oral charge failed to allege an "essential fact"—that Wheeler operated a vehicle on a public road, street or highway; (2) denied his motion for judgment of acquittal, pursuant to HRPP Rule 29; and (3) convicted him of OVUII because the State failed to allege a material element of the offense thereby making the charge fatally defective. The crux of Wheeler's argument was that the

oral charge was deficient because "the location of the driving at issue was an essential fact that the State was required to both plead and prove to obtain a conviction." Accordingly, Wheeler requested that the ICA "reverse and vacate" the district court's judgment of conviction and sentence.

The State argued that the charge was sufficient because it had stated the material elements of OVUII by "track[ing] the statutory language of HRS § 291E–61(a)(1)" and "includ[ing] details identifying the venue, jurisdiction, and date on which [Wheeler] allegedly committed the [OVUII] offense[.]"

The State further argued in its answering brief that the term "[o]perate was not merely a generic or descriptive word, but a statutorily defined legal term of art specifying the conduct element of HRS § 291E–61(a)(1)." The State concluded that "the inclusion of 'operate' without the component parts of the statutory definition in the oral charge did not render the charge legally insufficient for failure to state an element." Moreover, the State contended that in State v. Ruggiero, 114 Hawai'i 227, 160 P.3d 703 (2007), this court upheld the sufficiency of a charge substantially similar to the oral charge in Wheeler's case.

Finally, the State argued that "[t]he evidence in the record ... reveals [Wheeler] had other information, which may be considered, that supports the conclusion [Wheeler] understood the location of the offense was [on] 'public' property." The State pointed out that Wheeler had already had his license revoked by the ADLRO. Since that process requires proof that Wheeler "operated [a] vehicle while under the influence of an intoxicant[,]" "it is hardly believable the defense would know [Wheeler's] license had been revoked by 'ADLRO,' but not know the factual basis upon which the decision was made."

In its March 6, 2009 SDO, the ICA held in relevant part as follows:

> The oral charge in this case was insufficient. The charge failed to include a plain, concise and definite statement of each of

---

6. Wheeler's counsel informed the court that Wheeler had already had his license revoked by the administrative driver's license revocation of-

fice (ADLRO) so there was no need to impose a license suspension.

the essential facts constituting the offense of OVUII because it failed to allege that Wheeler operated a vehicle on a public road, street or highway, an attendant circumstance of the offense. *See* HRPP Rules 5(b) and 7(a); HRS § 702–205; *State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977) (oral charge must sufficiently allege all of the essential elements of the offense charged; defective charge constitutes denial of due process). The District Court erred by denying Wheeler's motions. Inasmuch as the charge was defective, the District Court was without jurisdiction in this matter. *See State v. Sprattling,* 99 Hawai'i 312, 327, 55 P.3d 276, 291 (2002).

Therefore, the District Court's April 1, 2008 Judgment is vacated and the matter remanded to the District Court with instructions to dismiss without prejudice.

*State v. Wheeler,* No. 29149, 2009 WL 568319, at *1 (Haw.App. March 6, 2009) (footnote omitted).

The ICA entered its judgment on April 15, 2009, vacating the district court's April 1, 2008 judgment and remanding the matter to the district court with instructions to dismiss without prejudice. The State timely filed its Application on July 13, 2009. Wheeler filed a response on July 24, 2009.[7]

## II. Standards of Review

### A. Certiorari

The acceptance or rejection of an application for a writ of certiorari is discretionary. HRS § 602–59(a) (Supp.2008). In deciding whether to accept an application, this court reviews the decisions of the ICA for (1) grave errors of law or of fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decisions and whether the magnitude of such errors or inconsistencies dictate the need for further appeal. HRS § 602–59(b).

### B. Sufficiency of the Charge

■ "Whether [a charge] sets forth all the essential elements of [a charged] offense . . .

is a question of law[,]" which we review under the de novo, or "right/wrong," standard. *State v. Wells,* 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995) (citations omitted).

### C. Statutory Construction

■ Statutory interpretation is "a question of law reviewable de novo." This court's construction of statutes is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

*Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & County of Honolulu,* 114 Hawai'i 184, 193–94, 159 P.3d 143, 152–53 (2007) (citations omitted).

## III. Discussion

### A. The State was required to allege that Wheeler operated a vehicle upon a public way, street, road or highway

■ The State contends that this court has "departed from strict technical rules construing the validity of an oral charge" when

---

7. Wheeler's response raises essentially the same arguments that he asserted on appeal to the ICA. His response did not challenge the specific relief ordered by the ICA, i.e., vacating and remanding to the district court with instructions to dismiss without prejudice.

"determining whether an offense has been sufficiently pleaded[.]" The State also argues that "the inclusion of [the word] 'operate' without the component parts of the statutory definition did not render the charge legally insufficient." In support of these arguments, the State cites to *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and *State v. Sprattling,* 99 Hawai'i 312, 55 P.3d 276 (2002).

### 1. Location is an element of the charge of OVUII

■ This court has stated that

It is well settled that an "accusation must sufficiently allege all of the essential elements of the offense charged," a requirement that "obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]" *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977). Put differently, the sufficiency of the charging instrument is measured, *inter alia,* by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" *State v. Wells,* 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (citations and internal quotation marks omitted) (brackets in original). "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 (citations omitted).[8]

*State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996); *see State v. Cummings,* 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003).

Wheeler was charged under HRS § 291E–61(a)(1), which provides in relevant part:

**§ 291E–61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

. . . .

The term "operate" is defined in the "[d]efinitions" section of chapter 291E as "to drive or assume actual physical control of a vehicle *upon a public way, street, road, or highway* or to navigate or otherwise use or assume physical control of a vessel underway on or in the waters of the State." HRS § 291E–1 (2007) (emphasis added). There is no definition provided for "assume[s] actual physical control."[9]

■ Thus, in order to commit the offense of OVUII, a person must either drive or assume actual physical control of a vehicle. HRS § 291E–61(a)(1). Under the analytical framework established by the Model Penal Code, this is the conduct element of the offense. HRS § 702–205 (1993) (the material elements of an offense are "conduct," "attendant circumstances," and "results of conduct");[10] HRS § 701–118(4) (1993) (defining

---

8. We have also noted that an insufficient oral charge implicates the requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282; *see* Haw. Const. art. I, § 14.

9. Cases from other jurisdictions have interpreted similar language as not requiring any movement of the vehicle and encompassing situations such as when an intoxicated defendant is found in a parked vehicle with the keys in the ignition. *See e.g., State v. Kelton,* 168 Vt. 629, 724 A.2d 452, 453 (1998) (defendant was in "actual physical control" of a vehicle when he put the key into ignition to roll up the automobile's electronically-

operated windows); *Richfield City v. Walker,* 790 P.2d 87, 93 (Utah App.1990) (although defendant was asleep and the vehicle's motor was not running, he was in "actual physical control" of the vehicle because the keys were in the ignition and the headlights were on).

10. **HRS § 702–205. Elements of an Offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

"conduct" as "an act or omission, or, where relevant, a series of acts or a series of omissions, or a series of acts and omissions"); HRS § 701–118(2) (defining "act" as "a bodily movement whether voluntary or involuntary").

Although the Model Penal Code does not define "attendant circumstance," we have recognized that "an attendant circumstance is essentially a circumstance that 'exist[s] independently of the [actor's conduct].'" *State v. Aiwohi*, 109 Hawai'i 115, 127, 123 P.3d 1210, 1222 (2005) (citation omitted). Examples cited in the commentary to the Model Penal Code include whether a person being assaulted by the defendant is a federal officer, or whether an aircraft on which the defendant is stowing away belongs to another person. *See* Model Penal Code § 2.02 cmt. at 3 n. 22. One example that we have recognized includes whether an object being carried by a defendant while committing a crime has "the quality of *being a firearm*." *See State v. Jenkins*, 93 Hawai'i 87, 112–13, 997 P.2d 13, 38–39 (2000) (emphasis in original).

■ Applying these principles here, we conclude that HRS § 291E–1 establishes an attendant circumstance of the offense of OVUII, i.e., that the defendant's conduct occur "upon a public way, street, road, or highway." This is clearly the case for a defendant who drives a vehicle while intoxicated, since HRS § 291E–1 expressly defines "operate" as encompassing the driving of a vehi-

cle "upon a public way, street, road, or highway."

■ While there is a potential ambiguity in the statute with regard to defendants who engage in the conduct of "assum[ing] actual physical control" of a vehicle, we conclude that the attendant circumstance established in HRS § 291E–1 applies to those defendants as well. Because "assumes actual physical control" is not defined in HRS § 291E–1, it could be argued that a defendant who engages in that specific conduct violates HRS § 291E–61 whether or not the conduct occurs on a public roadway. However, interpreting the statute in that manner would render the reference to "assumes actual physical control" in HRS § 291E–1's definition of "operate" a nullity, which is an outcome that we must strive to avoid. *See Potter v. Hawai'i Newspaper Agency*, 89 Hawai'i 411, 422, 974 P.2d 51, 62–63 (1999) ("Our rules of statutory construction require us to reject an interpretation of [a] statute that renders any part of the statutory language a nullity." (citations omitted)). Accordingly, we interpret the definition of "operate" in HRS § 291E–1 as referring generally to the conduct of "operating" a vehicle under the influence as described in the title of HRS § 291E–61(a), whether the conduct consists of driving the vehicle or otherwise assuming actual physical control of it. This interpretation is consistent with the legislative history of HRS chapter 291E,[11] and is further supported by the rule of lenity. *See State v. Shimabukuro*, 100

---

11. In 2000, the legislature enacted what was subsequently codified as chapter 291E, which became effective January 1, 2002. *See* 2000 Haw. Sess. Laws Act 189, §§ 23 and 41, at 407–430, 433. The purpose for adding the new chapter was to "consolidate, for purposes of uniformity and consistency, where appropriate, the provisions relating to operating a vehicle while using an intoxicant." *See* 2000 Haw. Sess. Laws Act 189, § 22, at 406–07. In doing so, the legislature repealed an earlier DUI law, HRS § 291–4 (Supp.2000), and enacted HRS § 291E–61. *See* 2000 Haw. Sess. Laws Act 189, §§ 30 and 41, at 432, 433.

Prior to the adoption of HRS chapter 291E, HRS § 291–4 defined the offense of Driving Under the Influence of Intoxicating Liquor as follows:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:
(1) The person operates or assumes actual physical control of the operation of any vehi-

cle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

. . . .

The former HRS chapter 291 contained no definition for the term "operate," *see* HRS § 291–1 (1993), and HRS § 291–4 on its face made no distinction between whether the offense occurred on a public road or on private land. Accordingly, under HRS § 291–4, an individual could be found guilty of driving under the influence anywhere in the State of Hawai'i. *See State v. Watson*, 71 Haw. 258, 259, 787 P.2d 691, 692

Hawai'i 324, 327, 60 P.3d 274, 277 (2002) ("Where a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity." (citations omitted)); *State v. Kaakimaka,* 84 Hawai'i 280, 292, 933 P.2d 617, 629 (1997) ("Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (citations omitted)); *State v. Bayly,* 118 Hawai'i 1, 15, 185 P.3d 186, 200 (2008) (ruling that, under the rule of lenity, it is "more appropriate to adopt a less expansive meaning of the term 'collision' ").

Other jurisdictions that have statutes penalizing driving a motor vehicle while intoxicated on a public street or highway consider the location of the proscribed conduct to be an element of the offense. *See e.g., Fowler v. State,* 65 S.W.3d 116, 118–19 (Tex.App.2001); *State v. Mark,* 154 N.C.App. 341, 571 S.E.2d 867, 870 (2002); *State v. McNeil,* 164 Vt. 129, 665 A.2d 51, 52–54 (1995); *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412, 413–14 (1990); *see also State v. Rollins,* 469 S.W.2d 46, 47 (Mo.App.1971) (speeding charge defective where State failed to allege that the offense took place upon a public highway or a public road).

Accordingly, the operation of a vehicle on a public way, street, road, or highway is an attendant circumstance of the offense of OVUII, and is therefore an element of the offense. *See* HRS § 702–205.

**2. The State's failure to allege that Wheeler operated or assumed actual physical control of his vehicle "upon a public way, street, road, or highway" rendered the oral charge insufficient**

██ Although the oral charge here tracked the language of HRS § 291E–61, the

failure of the charge to allege that Wheeler was driving his vehicle upon a public way, street, road, or highway at the time of the offense rendered the charge deficient.

██ In general, "[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." *State v. Jendrusch,* 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977); *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (citations omitted); *see* HRPP Rules 5 and 7 (2007).

██ However, "where the definition of an offense ... includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species .... [and] descend to particulars." *State v. Israel,* 78 Hawai'i 66, 73, 890 P.2d 303, 310 (quoting *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). Moreover, including a citation to the statute in the charge does not cure a charge that omits an essential element of the offense. *See State v. Elliott,* 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) (reversing defendant's convictions for resisting arrest and assault against a police officer because the State had omitted an essential element of those offenses and reference to the statute did not cure that defect).

The State argues that it did not need to allege the component parts of the statutory definition of "operate." In support of that argument, the State cites to *Hamling v.*

(1990) (even though other statutes, in pari materia, apply only to actions taken on public highways, nothing in HRS § 291–4 "requires that the operation of a vehicle while under the influence of intoxicating liquor be done on a public highway"). The legislative history from the 2000 revision does not specifically explain why the definition of "operates" was added, although it appears to have been part of the general purpose of making the statute more uniform and consistent. Prior to the 2000 recodification, the statute contained some provisions that required that conduct occur on a public highway, *see* HRS

§ 291–4.5 (Supp.1999)(providing that a person whose license had been suspended or revoked for DUI shall not "operate a motor vehicle upon the highways of this State"), and some, like HRS § 291–4, that did not. The inclusion of a single definition of "operate" in HRS § 291E–1 appears to have been part of an effort to standardize these provisions. *Compare* HRS § 291E–61 *with* HRS § 291E–62 (recodifying the prior section 291–4.5). Notably, those sections were also retitled, so that they now refer to "operating" a vehicle rather than "driving" a vehicle.

**394**

*United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In *Hamling*, Petitioners challenged the sufficiency of an indictment "charging use of the mails to carry an obscene book, The Illustrated Presidential Report of the Commission on Obscenity and Pornography, and an obscene advertisement, which gave information as to where, how, and from whom and by what means the Illustrated Report might be obtained," in violation of 18 U.S.C. § 1461.[12] *Id.* at 91, 94 S.Ct. 2887. The Petitioners claimed that the indictment, which tracked the language of the statute, failed to provide them with adequate notice of the charges against them, specifically the definition of "obscenity." *Id.* at 117, 94 S.Ct. 2887. The Supreme Court disagreed, reasoning that

> The definition of obscenity, however, is not a question of fact, but one of law; the word 'obscene,' as used in 18 U.S.C. § 1461, is not merely a generic or descriptive term, but a legal term of art. The legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him. Since the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish its sufficiency, the indictment in this case was sufficient to adequately inform petitioners of the charges against them.

*Id.* at 118–19, 94 S.Ct. 2887 (citations omitted).

While the Supreme Court in *Hamling* did not require that the component elements of the "constitutional definition" of obscenity be pleaded in an indictment,[13] it is significant that the term "obscenity" itself provided a person of common understanding with some notice of the nature of the prohibited conduct. In contrast, "operate" has been statu-

torily defined in HRS § 291E–1 in a manner that does not comport with its commonly understood definition. The word "operate" has been defined as "to perform a function, or operation, or produce an effect," *Black's Law Dictionary* 1091 (6th ed.1990), or "to perform a function[,] exert power or influence [or] to produce an appropriate effect[,]" *Merriam–Webster's Collegiate Dictionary* 814 (10th ed.1993), and does not geographically limit where the conduct must take place. The statutory definition of "operate," however, requires that the conduct take place "upon a public way, street, road, or highway." HRS § 291E–1. Therefore, the term "operate" as used within HRS § 291E–61 is neither "unmistakable" nor "readily comprehensible to persons of common understanding." *Merino*, 81 Hawai'i at 214, 915 P.2d at 688; *see Israel*, 78 Hawai'i at 70, 890 P.2d at 307; *Cummings*, 101 Hawai'i at 141, 144–45 & 145 n. 4, 63 P.3d at 1111, 1114–15 & 1115 n. 4.

This court's analysis of charges under the Hawai'i constitution has focused on whether the language actually used in the charge provides fair notice to the defendant. *See, e.g., Israel*, 78 Hawai'i at 70, 890 P.2d at 307 (complaint was insufficient because " 'the nature and cause of the accusation [could not] be understood by a person of common understanding' *from a reading of the complaint itself.*") (emphasis added). In *State v. Cummings*, the defendant was charged with DUI in violation of HRS § 291–4(a)(1) (Supp. 1998). 101 Hawai'i at 140–41, 63 P.3d at 1110–11. The statute defined the offense as operating a vehicle "while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard

**12.** Title 18 U.S.C. § 1461 provided in pertinent part, "Every obscene, lewd, lascivious, indecent, filthy, or vile article, matter, thing, device, or substance ... [i]s declared to be nonmailable matter[.]" *See Hamling*, 418 U.S. at 99 n. 8, 94 S.Ct. 2887.

**13.** As articulated by the court in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (citations omitted):

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest ...; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*See Hamling*, 418 U.S. at 102, 94 S.Ct. 2887.

against casualty[.]" *Id.* at 141, 63 P.3d at 1111. The complaint alleged that defendant operated a vehicle while under the influence of intoxicating liquor, but omitted any reference to the amount of intoxicating liquor. *Id.* at 142, 63 P.3d at 1112. Although the majority and dissenting opinions differed on the question of whether the phrase "under the influence of intoxicating liquor" gave fair notice to the defendant that he was being accused of having consumed an amount of liquor sufficient to impair him, they both recognized that the question of whether the charging language itself provided fair notice of that aspect of the charge was the relevant inquiry. *Id.* at 145 n. 4, 63 P.3d at 1115 n. 4 (opinion for the court by Levinson, J.) ("Contrary to the dissent, we do not believe that the phrase 'under the influence of intoxicating liquor' speaks for itself"); *id.* at 146, 63 P.3d at 1116 (Moon, C.J., and Nakayama, J. dissenting) ("the charge was sufficient to give Cummings notice of all the essential elements that the prosecution was required to prove[,]" given the "common understanding of the term" "under the influence"); *see also Sprattling,* 99 Hawai'i at 318–19, 55 P.3d at 282–83 (subsequent to trial, defendant challenges omission of the word "bodily" from a charge of third degree assault; this court applied the "liberal construction standard" applicable to post-conviction challenges, and concluded that the charge was sufficient since "the omission did not alter the nature and cause of the accusation such that a person of common understanding would fail to comprehend it. . . . The word 'assault' by definition implies bodily injury."); *see also* HRS § 806-31 (1993) (providing that in cases charged by indictment, "[n]o indictment . . . is invalid or insufficient for the reason merely that it alleges indirectly and by inference instead of directly any matters, facts, or circumstances connected with or constituting the offense, *provided that the nature and cause of the accusation can be understood by a person of common understanding* ") (emphasis added).

In some cases, such as *Cummings,* there may be a fine line between what is fairly implied in the language of the charge and what is not. However, the instant charge is well beyond that line. The use of the phrase "operate" did not provide adequate notice to Wheeler that the State was required to prove that his operation of the vehicle occurred on a public way, street, road, or highway. *See, e.g., Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (charge is sufficient when it tracks statutory language that "fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding") (citations omitted); *Wells,* 78 Hawai'i at 379–80, 894 P.2d at 76–77 (charge must sufficiently apprise defendant of what he or she must be prepared to meet).

Moreover, none of the other information in the charge provided Wheeler with fair notice of that element. The charge here did not contain any specification of where the alleged offense occurred, other than that it took place in the City and County of Honolulu. *See State v. Baker,* 55 Haw. 621, 622–23, 525 P.2d 571, 572 (1974) (indictment charging defendant with forgery in the second degree was sufficient, although inarticulately drawn due to technical errors in its wording, because it "provided the [defendant] with sufficient facts to put him on reasonable notice of the charges against him"); *Sprattling,* 99 Hawai'i at 315, 331, 55 P.3d at 279, 295 (Levinson, J. and Ramil, J., dissenting) (in assault case, oral charge alleged that defendant had caused injury, but not bodily injury, to the complaining witness; dissent notes that "[s]uch an omission, however, might have been cured had the deputy prosecutor articulated with specificity the type of 'injury' that Sprattling caused, or alternatively, the mechanism of causation"); *see also* HRS § 806-34 (1993) ("In an indictment . . . the transaction may be stated with so much detail of time, place, and circumstances . . . as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, . . . and to give the accused reasonable notice of the facts."). Accordingly, the charge was deficient.

In its brief to the ICA, the State argued that this court looks to all of the information provided to a defendant in determining whether his right to be informed has been violated. According to the State, the record establishes that Wheeler had already had his license revoked by the ADLRO in a process

which requires proof that Wheeler "operated [a] vehicle while under the influence of an intoxicant." Therefore, the State contends "it is hardly believable [that] [Wheeler] would know [that his] license had been revoked by 'ADLRO,' but not know the factual basis upon which the decision was made." In support of this argument, the State cites to *Sprattling* and *State v. Treat*, 67 Haw. 119, 680 P.2d 250 (1984).

In both *Sprattling* and *Treat*, this court recognized the general principle that in determining whether a defendant has been adequately informed of the charges against him, the appellate court can consider other information in addition to the charge that may have been provided to the defendant during the course of the case up until the time defendant objected to the sufficiency of the charges against him. In *Sprattling*, this court affirmed Sprattling's conviction for third-degree assault even though the word "bodily" had been omitted from the oral charge. Sprattling did not challenge the sufficiency of the oral charge at trial, but instead raised the issue for the first time on appeal. *Id.* at 315–16, 55 P.3d at 279–80. Accordingly, this court reviewed the entire record including statements made by Sprattling to the district court, an admission that he had pushed the victim, and his counsel's closing argument which recited the elements of third-degree assault, in determining that Sprattling's right to be informed had not been violated. *Id.* at 318–21, 55 P.3d at 282–85.

Unlike Sprattling, the defendant in *Treat* objected at the trial level to the sufficiency of the indictment charging him with theft in the first degree. 67 Haw. at 120, 680 P.2d at 251. The trial court dismissed the indictment on the grounds that the use of the phrase "receive, retain, or dispose of" in the indictment rendered it defective. *Id.* The

State appealed. *Id.* In a brief opinion, this court reversed the order dismissing the indictment because the record reflected that prior to the motion to dismiss, "[Treat] had been supplied with the grand jury transcript which clearly established the details of the crime[,]" and thus he had been "fully informed of the nature and cause of the accusation against him." *Id.*

■ In the present case, Wheeler's counsel immediately objected to the sufficiency of the State's oral charge.[14] Accordingly, this court may only consider information supplied to Wheeler prior to his timely, pre-trial objection in determining whether his right to be informed of the nature and cause of the accusation against him has been violated. *See Sprattling*, 99 Hawai'i at 318–19, 55 P.3d at 282–83. Although the State argues that because Wheeler had gone through ADLRO proceedings it can be inferred that he must have known that the OVUII offense had occurred on "public" property, the evidence in the record is insufficient to establish that inference. Accordingly, assuming arguendo that the analysis in *Treat* is applicable, nevertheless the record does not establish that Wheeler was in fact "fully informed of the nature and cause of the accusation against him" before he moved to dismiss the charge. *Treat*, 67 Haw. at 120, 680 P.2d at 251.

For the foregoing reasons, we conclude that the oral charge was insufficient.

**B. This court's holdings in *State v. Ruggiero* and *State v. Kekuewa* do not require a contrary result**

The State contends that *Ruggiero* and *Kekuewa* "established precedent" which supports the State's argument that the oral charge was sufficient. Specifically, the State notes that the charging language used in both of those cases was very similar to that

---

14. Although timely made, it could be argued that Wheeler's motion to dismiss was insufficient because it did not adequately state "the grounds upon which it [was] made." *See* HRPP Rule 47(a); *see also United States v. Crowley*, 236 F.3d 104, 106 (2nd Cir.2000) (holding that "to raise a pretrial objection to the specificity of an indictment within the meaning of [Federal Rule of Criminal Procedure 12(b)(2)], a defendant must apprise the District Court of those particular

portions of the indictment that are lacking in the requisite specificity, and explain why, in the circumstances, greater specificity is required."). However, we do not address that issue here because the State did not raise it in its Application, and the district court denied Wheeler's Rule 29 motion even after defense counsel fully explained the grounds for Wheeler's motion to dismiss.

used by the prosecutor here, and that in both cases this court remanded for entry of judgments sentencing the defendants for OVUII as a first offense under HRS § 291E–61. Accordingly, the State argues that there is an "obvious inconsistency" between the holdings of *Ruggiero, Kekuewa,* and the SDO, and that the ICA "appears to have overlooked its duty to apply the rule of *stare decisis.*"

However, this court's holdings in *Ruggiero* and *Kekuewa* do not require a result different from that reached by the ICA. In *Ruggiero,* the defendant was convicted of OVUII, HRS § 291E–61(a)(1),[15] on January 29, 2003. 114 Hawai'i at 229, 160 P.3d at 705. Ruggiero appealed the conviction, and on March 10, 2004, while his appeal was pending, he allegedly again operated a vehicle while under the influence of alcohol. *Id.* However, on March 19, 2004, this court reversed Ruggiero's January 29, 2003 conviction. *Id.*

On April 19, 2004, the prosecution charged Ruggiero by complaint with, inter alia, OVUII in violation of HRS § 291E–61 (Supp. 2003) as follows:

> That on or about the 10th day of March, 2004, in the Division of Wailuku, County of Maui, State of Hawai'i, ADAM M. RUGGIERO did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant in violation of Section 291E–61 of the Hawai'i Revised Statutes.

*Id.* at 230 n. 3, 160 P.3d at 706 n. 3.

Ruggiero did not contest the sufficiency of the complaint at trial, and was tried and convicted of the charge. *Id.* at 229–30, 160 P.3d at 705–06. At the sentencing phase of the trial, the State moved for an "enhanced sentence" based on the prior January 29, 2003 conviction. *Id.* at 230, 160 P.3d at 706. The court requested that the parties brief the issue of the legal effect of HRS § 291E–61(c)[16] where the second offense took place nine days prior to the reversal of Ruggiero's first offense. *Id.* Ruggiero argued that the language was ambiguous and that the ambiguity should therefore be construed in his favor. *Id.* The district court concluded that Ruggiero's March 10, 2004 offense was his second offense within a five-year period under HRS § 291E–61 since it had not yet been reversed when he committed the charged offense. *Id.* at 231, 160 P.3d at 707.

On appeal, Ruggiero argued that the district court erred in basing his sentence on the commission of a second offense within a five-year period because HRS § 291E–61 is a purely recidivist statute which required that

---

**15.** At the time, HRS § 291E–61 (Supp.2002) provided in relevant part that:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> ....
> (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
> ....
> (2) For an offense that occurs within five years of a prior conviction for an offense under this section ... by:
> (A) Prompt suspension of license ... for a period of one year ...;
> (B) Either one of the following:

> (i) Not less than two hundred forty hours of community service work; or
> (ii) Not less than five days but not more than fourteen days of imprisonment ...'
> (C) A fine of not less than $500 but not more than $1,500[.]

**16.** In 2003, HRS § 291E–61(c) was amended to add the underscored language:

> Notwithstanding any other law to the contrary, any:
> (1) Conviction under this section ...:
> ....
> shall be considered a prior conviction for the purposes of imposing sentence under this section. Any judgment on a verdict or a finding of guilty, a plea of guilty or nolo contendere, or an adjudication in the case of a minor, that at the time of the offense has not been expunged by pardon, reversed, or set aside shall be deemed a prior conviction under this section.

*Ruggiero,* 114 Hawai'i at 235 n. 10, 160 P.3d at 711 n. 10.

enhanced sentences be based on convictions valid at the time of sentencing. *Id.* at 232–33, 160 P.3d at 708–09. This court rejected that argument, but went on to conclude that the district court plainly erred in convicting and sentencing Ruggiero as a second-time offender because the complaint was insufficient. *Id.* at 239–41, 160 P.3d at 715–17 (plurality opinion of Levinson, J. and Duffy, J.).[17] This court reasoned that since a prior conviction as described in HRS § 291E–61(b)(2) is an "elemental attendant circumstance," it was necessary that Ruggiero's prior conviction be alleged in the charging instrument and proven at trial. *Id.* at 239, 160 P.3d at 715.

This court then considered whether Ruggiero could be sentenced as a first-time offender, an outcome which, according to the plurality, Ruggiero had "conced[ed]" was appropriate. *Id.* at 240, 160 P.3d at 716. This court stated that

> the complaint can reasonably be construed to charge the crime of DUI as a first offense, in violation of HRS § 291E–61(a) and (b)(1). It plainly states the elements set forth in HRS § 291E–61(a) ("operates or assumes actual physical control of a vehicle") and –61(a)(1) ("[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty").

*Id.* at 240, 160 P.3d at 716.

Accordingly, this court remanded the matter to the district court for entry of a judgment of conviction for operating a vehicle under the influence of an intoxicant with no prior offenses in violation of HRS § 291E–61(a) and (b)(1), and for resentencing in accordance therewith. *Id.* at 241, 160 P.3d at 717.

In *Kekuewa*, the defendant was charged with, inter alia, OVUII in violation of HRS § 291E–61, as follows:

> [O]n or about the 15th day of April 2004, in the City and County of Honolulu, State of Hawaii, island of Oahu, you did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair your normal mental faculties or the ability to care for yourself and guard against casualty thereby violating Section 291E–61 of the Hawaii Revised Statutes *for your second offense.*

114 Hawai'i at 415, 163 P.3d at 1152 (emphasis in original).

At trial, Kekuewa did not contest the sufficiency of the charge. *Id.* The district court found Kekuewa guilty of OVUII and Kekuewa appealed. *Id.*

On appeal, Kekuewa argued, inter alia, that he did not have adequate notice of the offense of OVUII because the prosecution failed to properly allege the attendant circumstances of Kekuewa's prior conviction. *Id.* at 416, 163 P.3d at 1153. The ICA reversed Kekuewa's OVUII conviction, holding that the absence of the five-year time period rendered the prosecution's oral charge defective. *Id.*

This court accepted the State's application for writ of certiorari, *id.*, and held, consistent with its ruling in *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), that prior OVUII convictions are "prima facie elements" of an OVUII charge. *Kekuewa*, 114 Hawai'i at 423, 163 P.3d at 1160. However, this court concluded that the ICA should have remanded for entry of judgment of conviction and resentencing as to the offense described by HRS §§ 291E–61(a) and (b)(1), instead of reversing the conviction.[18] *Id.* at 425, 163 P.3d at 1162.

> Acoba agreed that the indictment was insufficient to support a conviction and sentence for OVUII as a second-time offender, but dissented with the plurality's holding that Ruggiero could be sentenced for OVUII as a first-time offender. *Id.* at 242–43, 160 P.3d at 718–19 (Acoba, J., concurring and dissenting).

**17.** In a concurring and dissenting opinion, Justice Nakayama and Chief Justice Moon agreed with the plurality that "HRS §§ 291E–61(a) and (b)(2)-(3) (Supp.2004) must be construed as delineating separate status offenses," but dissented with the majority's conclusion that "HRS § 291E–61(b)(1) also describes attendant circumstances (i.e., essential elements)." *Ruggiero*, 114 Hawai'i at 241, 160 P.3d at 717 (Nakayama, J., concurring and dissenting, joined by Moon, C.J.) In a concurring and dissenting opinion, Justice

**18.** Justice Acoba dissented, noting that "the offense listed in 291E–61(b)(1) cannot be 'included' in the purportedly greater offense in 291E–61(a)

Relying on *State v. Elliott*, 77 Hawai'i 309, 884 P.2d 372 (1994), this court reasoned that "absent the phrase 'for your second offense,' the prosecution's oral charge set forth the essential elements of the included offense described by HRS §§ 291E–61(a) and (b)(1) (Supp.2004)." *Id.* at 426, 163 P.3d at 1163 (citation omitted). This court held that the record contained sufficient evidence that Kekuewa committed the offense of OVUII under HRS § 291E–61(a)(1) and (b)(1) and remanded for entry of judgment of conviction and resentencing for that offense. *Id.* at 426, 163 P.3d at 1163.

Thus, *Ruggiero* and *Kekuewa* focused on whether a charge that failed to adequately allege that the defendant had a prior OVUII conviction within the past five years was nevertheless sufficient to charge a first-offense OVUII. Neither defendant raised the issue of whether the proscribed conduct must take place "upon a public way, street, road, or highway" and, if so, whether it had been adequately alleged in the charge. As a result, this court did not address that issue in *Ruggiero* or *Kekuewa*.

 Contrary to the argument of the State, for purposes of *stare decisis*, the holdings of those cases are limited to the issues that were actually decided by the court, and are not dispositive of the distinct issue presented here. *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citations omitted)); *see E & J Lounge Operating Co., Inc. v. Liquor Comm'n of City & County of Honolulu*, 118 Hawai'i 320, 338, 189 P.3d 432, 450 (2008) (since the parties in a prior case resulting in a published decision had not raised the issue of whether the Hawai'i Liquor Commission failed to comply with contested case requirements prescribed by HRS chapter 91, it was error to conclude that "because this court did not discuss the applicability of HRS chapter 91 contested-case rules to the Commission, that the Commission is excused from comply-

ing with those rules"). This is true even if the sufficiency of the charge is characterized as a jurisdictional issue. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed on sub silentio." (citations omitted)); *Indian Oasis–Baboquivari Unified Sch. Dist. v. Kirk*, 91 F.3d 1240, 1243 (9th Cir. 1996) ("It is well settled, however, that the exercise of jurisdiction in a case is not precedent for the existence of jurisdiction." (citation omitted)).

Moreover, *Ruggiero* and *Kekuewa* are factually distinguishable from the circumstances of this case. Unlike Wheeler, neither of those defendants made a timely objection to the sufficiency of the OVUII charge in the trial court. Ruggiero never challenged the sufficiency of the complaint, including on appeal, and, according to the plurality, even conceded that he was subject to sentencing as a first-time offender. *Ruggiero*, 114 Hawai'i at 240, 160 P.3d at 716. Although Kekuewa challenged the sufficiency of the prosecution's charge on appeal, he did so only with regard to whether it adequately alleged his prior offense. *Kekuewa*, 114 Hawai'i at 416, 163 P.3d at 1153. In contrast, Wheeler immediately objected to the sufficiency of the oral charge, prior to the commencement of trial.

 The distinction is significant since this court has applied different principles depending on whether or not an objection was timely raised in the trial court. Under the "*Motta/Wells* post-conviction liberal construction rule," we liberally construe charges challenged for the first time on appeal. *See Merino*, 81 Hawai'i at 212, 915 P.2d at 686; *Wells*, 78 Hawai'i at 381, 894 P.2d at 78; *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374; *State v. Motta*, 66 Haw. 89, 90, 657 P.2d 1019, 1019–20 (1983). Under this approach, there is a "presumption of validity," *Sprattling*, 99 Hawai'i at 318, 55 P.3d at

---

because subsection (a) itself merely describes OVUII conduct and does not set forth *any* offense

at all." *Id.* at 436, 163 P.3d at 1173 (Acoba, J., concurring and dissenting).

282, for charges challenged subsequent to a conviction. In those circumstances, this court will "not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime." *Merino*, 81 Hawai'i at 212, 915 P.2d at 686 (citation omitted). However, the rule does not apply when reviewing timely motions challenging the sufficiency of an indictment. *See State v. Robins*, 66 Haw. 312, 313–14, 660 P.2d 39, 41 (1983) (court declines to employ a *Motta/Wells* analysis when reviewing timely motions).

 Thus, because Wheeler timely objected to the oral charge in the district court,

the *Motta/Wells* analysis is not applicable here.[19] This additional distinction between the circumstance of this case and *Ruggiero* and *Kekuewa* further rebuts the State's suggestion that these cases are controlling here.

## IV. CONCLUSION

We affirm the ICA's April 15, 2009 judgment.

19. Accordingly, we do not address whether the application of that analysis would require a different result in the circumstances of this case, if the objection was not timely made.