**Electronically Filed
Supreme Court
SCAP-15-0000084
21-OCT-2016
08:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

JAMES DANNENBERG, BILLY SOUTHWOOD, VALERIE YAMADA SOUTHWOOD,
DUANE PREBLE, and SARAH PREBLE, individually
and on behalf of all others similarly situated,
Respondents/Plaintiffs-Appellants/Cross-Appellees,

vs.

STATE OF HAWAIʻI, HAWAIʻI EMPLOYER-UNION
HEALTH TRUST FUND, BOARD OF TRUSTEES OF THE
HAWAIʻI EMPLOYER-UNION HEALTH BENEFITS TRUST FUND,
Petitioners/Defendants-Appellees/Cross-Appellants,

and

COUNTY OF KAUAʻI, CITY AND COUNTY OF HONOLULU,
COUNTY OF MAUI, COUNTY OF HAWAIʻI,
Respondents/Defendants-Appellees.

SCAP-15-0000084

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-15-0000084; CIV. NO. 06-1-1141)

OCTOBER 21, 2016

INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE LEONARD,
ACTING C.J., CIRCUIT COURT JUDGES HARA, CAHILL, KURIYAMA, AND
CRABTREE IN PLACE OF NAKAYAMA, MCKENNA, POLLACK, AND WILSON, JJ.,
RECUSED, AND CIRCUIT COURT JUDGE ALM, RECUSED, PREVIOUSLY
ASSIGNED IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY LEONARD, ACTING C.J.

This class action suit concerns the health benefits provided by the State of Hawai'i, the City and County of Honolulu, and the Counties of Kaua'i, Maui, and Hawai'i, to the following class members:

> All employees (and their dependent-beneficiaries) who began working for the Territory of Hawai'i, the State of Hawai'i or the political subdivisions thereof, before July 1, 2003, and who have accrued or will accrue a right to post-retirement health benefits as a retiree or dependent-beneficiary of such a retiree.  This includes:  (a) those who have not yet received any post-retirement health benefits from Defendants as a retiree or dependent beneficiary of such a retiree; and (b) those who have received any post-retirement health benefits from Defendants since July 1, 2003 as a retiree or dependent-beneficiary of such a retiree.  For purposes of damages only, if any, the class shall also include the estates and heirs of any deceased retiree or deceased dependent-beneficiary of a retiree who is or was a member of the class.[1]

As the parties submit, the central issue in this case is whether the State and Counties have impaired the appellants' accrued retirement health benefits in violation of article XVI, section 2 of the Hawai'i Constitution, which provides:

> Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired.

Individually and on behalf of all others similarly situated, Plaintiffs-Appellants/Cross-Appellees James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble, and Sarah Preble (**Appellants**) appeal, and Defendants-Appellees/Cross-

---

[1]    This class was certified, pursuant to Appellants' December 17, 2010 motion, which was heard on March 8, 2011, by the Honorable Patrick W. Border.  The written order granting class certification, which is quoted above, was entered by the Honorable Jeannette H. Castagnetti on August 29, 2013.

Appellants State of Hawai'i, the Employer-Union Health Benefits Trust Fund (**EUTF**), and the Board of Trustees of the EUTF (**EUTF Board**) (together, the **State**)[2] cross-appeal, from the January 30, 2015 Final Judgment (**Judgment**), filed in the Circuit Court of the First Circuit (**Circuit Court**),[3] as well as challenge, in whole or in part, the Circuit Court's:  (1) October 16, 2014 Order Denying Plaintiffs' Motion for Partial Summary Judgment and Order Granting State Defendants' Motion for Partial Summary Judgment (**Summary Judgment Order**); and (2) December 16, 2014 Order Denying Plaintiffs' Motion for Reconsideration or, in the Alternative, Leave to Pursue an Immediate Interlocutory Appeal of the Summary Judgment Order (**Order Denying Reconsideration**).

We hold, *inter alia*, that:  (1) pursuant to article XVI, section 2 of the Hawai'i Constitution, benefits arising from membership in the Hawai'i employees' retirement system (**ERS**), including retiree health benefits, accrue upon an employee's enrollment in the ERS, subject to any conditions precedent in place at the time of enrollment that must be satisfied before receiving the benefits; (2) notwithstanding a repealed statutory provision that required "substantial equality of benefits" to all State and County "Employees" who were entitled to receive them, article XVI, section 2 of the Hawai'i Constitution protects accrued retiree health benefits, not parity of health benefits between active employees and retirees; (3) the starting place for

_____

[2]    Defendants-Appellees County of Kaua'i, City and County of Honolulu, County of Maui, and County of Hawai'i (the **Counties**) did not join in the cross-appeal.

[3]    The Honorable Jeannette H. Castagnetti presided.

a determination of Appellants' accrued retirement health benefits is the retirement health benefits that were promised to Appellants at the time of their enrollment in the ERS, as these are the benefits that, in the first instance, arise from their membership in the ERS; (4) Appellants' constitutionally protected retirement health benefits are not an exact package of health benefits, fixed as of a certain date, unchanged and unchangeable over time, and such benefits remain subject to legislative changes, so long as those changes do not result in a diminishment or impairment of the benefits that have been accrued; and (5) there are genuine issues of material fact as to whether Appellants' accrued retirement health benefits have been diminished or impaired in violation of article XVI, section 2.

I.    LEGISLATIVE BACKGROUND

In 1961, the Hawai'i Legislature passed Act 146, which created the Hawai'i Public Employees Health Fund (**Health Fund** or **PEHF**) as a vehicle to provide active and retired government employees and their dependents with a health benefits plan. 1961 Haw. Sess. Laws Act 146. The Health Fund Act established a Board of Trustees to administer and carry out the purpose of the Health Fund. Revised Laws of Hawaii (**RLH**) § 5A-12 (Supp. 1961); 1961 Haw. Sess. Laws Act 146, § 1(13) at 194. The Board's duties included determining the health services to be provided by health benefit plans, entering into contracts for health benefit plans, selecting the carrier to provide indemnity-type health benefit plans, and establishing eligibility requirements for employees

and their dependents.  RLH §§ 5A-13 to -15 (Supp. 1961); 1961 Haw. Sess. Laws Act 146, § 1 (13)-(15) at 194.

The Health Fund was terminated with the repeal of Hawaii Revised Statutes (HRS) Chapter 87, effective June 30, 2003.  2001 Haw. Sess. Laws Act 88, §§ 1-10 at 138-52.  The Health Fund was replaced with the EUTF, through the passage of Act 88, which is now codified as HRS Chapter 87A.  In enacting Act 88, the Legislative Conference Committee stated:

> If nothing is done now, the spiraling cost of the Health Fund will create significant financial hardships for state taxpayers.  Recognizing the urgency of this matter, your Committee on Conference finds that reforming the Health Fund is the responsible thing to do.
> This bill will ensure that the Health Fund, and the succeeding Trust Fund, will remain solvent.  Consolidating the health benefits programs under the existing system will ensure the solvency of the State, as well as benefit all public employees and retirees today and in the future.
> It is not the intention of your Committee on Conference that public employees and retirees suffer a diminishment of existing health benefits.  This bill will give the governing boards of the Trust Fund and the Health Fund, during the transition period, complete discretion, authority, and flexibility to devise and maximize the levels and types of benefits available for public employees and retirees.

Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1098 (emphasis added).  To this purpose, the EUTF was to take charge of the various health benefits programs and "establish a single health benefits delivery system for State and county employees, retirees, and their dependents."  Id. at 1097.

Some of the issues raised in this case concern the language and applicability of the now-repealed HRS Chapter 87. With the enactment of Chapter 87, more specifically HRS § 87-22(b), the Legislature authorized the Health Fund Board to determine the health services offered in a health benefits plan

and to contract for a health benefits plan "provided that benefits under any respective plan shall be equally available to all employees and their dependents selecting such plan regardless of age[.]" 1961 Haw. Sess. Laws Act 146, § 1(13) at 194. Members of the House Finance Committee had expressed concern that "[h]ealth benefits under the federal medicare program for the aged may be inferior to health benefits under the state health benefits plans and retirees or old employees should not be discriminated against, but should have the plan offering the better benefits." Stand. Comm. Rep. No. 978, in 1961 House Journal, at 1048. The Finance Committee amended a previous draft of the bill, adding the section 87-22(b) clause, in part to "prevent possible discrimination regarding the availability of benefits against older persons." Id. From the Health Fund's inception in 1961 until 2001, HRS § 87-22(b) maintained this language, with some minor amendments. HRS § 87-22(b) (Supp. 2000), repealed by 2001 Haw. Sess. Laws Act 88, § 3 at 50.[4] In addition, however, from its inception, the Health Fund Act also provided that the meaning of the term "employee" included "a retired member of the employees' retirement system, the county pension system or the police, firemen or bandsmen pension systems. . .," thus equating active employees and retirees for the purpose of the Act. See 1961 Haw. Sess. Laws Act 146, § 1(1)(e)(9) at 192.

---

[4] For the purpose of brevity, in some instances, "(repealed)" may be used herein in lieu of the full citation to Act 88 of 2001.

In 2001, the Legislature amended HRS § 87-22(b), removing the language that "benefits . . . shall be equally available to all employee-beneficiaries and dependent-beneficiaries selecting the plan regardless of age[.]" HRS § 87-22(b) (Supp. 2001) (repealed). This amendment to HRS § 87-22(b) was effective from July 1, 2001, until July 1, 2003, when Chapter 87 was repealed and replaced with Chapter 87A, and the Health Fund was replaced with the EUTF. 2001 Haw. Sess. Laws Act 88, §§ 3-10 at 150-52.

The EUTF is administered by the EUTF Board, which is charged with procuring health benefit plans for employees (and their dependents), including retirees. HRS § 87A-5 (2012); see also Conf. Comm. Rep. No. 124, in 2001 House Journal at 1098. The EUTF Board has awarded contracts for various health plans including, *inter alia*, a "new" Hawaii Medical Service Association (**HMSA**) Preferred Provider medical plan, a Kaiser Health Maintenance Organization (**Kaiser**) medical and prescription drug plan, a Vision Service Plan (**VSP**), and a Hawaii Dental Service (**HDS**) plan. Although HRS Chapter 87A includes retirees within its definition of employees, it does not include language requiring benefits to be equally available to all employees. See HRS §§ 87A-1 & 87A-23 (2012).

According to Appellants' health benefits expert, Paul A. Tom, in 2001 and 2002, retirees received the same health benefits, including the same coverage, deductibles, maximums, and co-pays, as active employees under the Health Fund; however, since July 1, 2003, the benefits for retirees and active

employees in HMSA plans changed in the form of coverage, deductibles, maximums, and co-pays.[5]

II. PROCEDURAL HISTORY

A. The Class Action Suit

On June 30, 2006, Appellants (retired state employees) Marion Everson,[6] James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble, and Sarah Preble, individually and on behalf of others similarly situated, filed a Complaint for Declaratory Relief, Injunctive Relief, and Damages, claiming that the State and Counties violated their statutory rights under HRS Chapter 87 and/or 87A by not providing retirees and their dependents with dental and medical benefits that were substantially equal to those provided to active workers and their dependents. On August 9, 2006, the State filed a motion to dismiss claiming, inter alia, that primary jurisdiction over Appellants' claims resided with the EUTF Board. On August 16, 2006, the Counties also filed a motion to dismiss and joined in the State's motion to dismiss.

On November 13, 2006, Appellants filed a First Amended Complaint in the Circuit Court, reasserting the claims of the original complaint, and adding a claim of negligence and a claim of violation of article XVI, section 2 of the Hawaiʻi Constitution.

---

[5] The court below noted, and Appellants agree, that the Kaiser, HDS, and VSP plans do not appear to be at issue in this case.

[6] Although Marion Everson was a party at that time, according to Appellants' October 5, 2007 notice of appeal to the Circuit Court in the related case, Everson v. State, 122 Hawaiʻi 402, 405, 228 P.3d 282, 285 (2010), Ms. Everson died before the resolution of that appeal and before the filing of the Second Amended Complaint in the instant case.

After a December 15, 2006 hearing, on June 26 and 29, 2007, the Circuit Court granted in part the defendants' motions to dismiss, on the grounds that the plaintiffs' claims "require the resolution of issues that have been placed within the special competence of the EUTF . . . [and] the EUTF board of trustees is charged with administering and carrying out the purposes of the [EUTF] including the provision of health benefits plans under HRS Sections 87A-15 and 87A-31[.]" Thus, the court concluded that the EUTF had primary jurisdiction over the plaintiffs' claims.[7] The Circuit Court ordered a stay of all proceedings pending resolution of the issues involved in the referral of the plaintiffs' claims to the EUTF, and otherwise held in abeyance any further ruling on the defendants' requests for dismissal of the action.

B.    The Agency Action

In a May 15, 2007 petition for declaratory relief to the EUTF Board, and a June 15, 2007 amendment to the petition (collectively, the **EUTF Petition**), Appellants sought a declaratory ruling as to the following four questions:

> A.    Is the EUTF permitted, notwithstanding Article XVI, Section 2 of the Hawai'i Constitution and the requirements of HRS Chapter 87A, to provide health care benefits to State and County retirees and their dependents which are inferior to the health care benefits provided to active State and County workers and their dependents?
>
> B.    If your answer to question A is "yes," what is the minimal array of the health care benefits that must be provided to retirees and their dependents?

---

[7]    The Honorable Bert I. Ayabe presided.

    C.    Did the EUTF health benefits plans in effect from July 1, 2003 to the present comply with the requirements of the Hawai'i Constitution and HRS Chapter 87A?

    D.    If your answer to Question C is "no," are retirees and/or their dependents entitled to either monetary compensation/damages or any other form of relief (legal or equitable)? If so, how is it to be calculated and for what period of time?

See Everson v. State, 122 Hawai'i 402, 405, 228 P.3d 282, 285 (2010).

On September 7, 2007, after briefings, evidentiary submissions, other filings, and an August 3, 2007 hearing, the EUTF Board issued its Findings of Fact, Conclusions of Law, and Order, concluding, inter alia, that: (1) it did not have jurisdiction to rule on the constitutional issue presented in Question A, but as to the statutory issue, HRS Chapter 87A permits the EUTF to provide health benefits to State and County retirees and their dependents that are different from and/or inferior to those provided to State and County active employees and their dependents; (2) in order to answer Question B, the EUTF Board would have to engage in speculation, consider theoretical or hypothetical situations, and render an advisory opinion, so the EUTF Board refused to answer Question B; and (3) the EUTF health benefits plan satisfies HRS Chapter 87A's statutory requirements (again declining to address the question of constitutionality).

On October 5, 2007, Appellants appealed the EUTF Board's decision to the Circuit Court.[8] After briefing and oral argument, on July 23, 2008, the Circuit Court entered a Decision

---

[8]     The Honorable Eden E. Hifo presided.

and Order Reversing the Decision of the [EUTF Board], concluding, *inter alia*, that: (1) article XVI, section 2 of the Hawai'i Constitution (the **Non-Impairment Clause**) "protects the accrued benefits but by so doing does not and has not prohibited the State legislature from changing the benefits for prospective employees;" (2) the phrase "similarly situated beneficiary" in HRS § 87A-23 "invokes comparison between retirees and active employees, not [just between] Medicare eligible retirees and early retirees who by age do not yet qualify for Medicare," thus, health benefits that are provided to retirees must "reasonably approximate" the benefits provided to active employees; and (3) some of the retiree health benefits included in the plan did not "reasonably approximate" the benefits provided to active employees, in violation of state law. The Circuit Court entered a Final Judgment on August 18, 2008. See Everson, 122 Hawai'i at 406, 228 P.3d at 286.

On September 15, 2008, the State and Counties appealed the Circuit Court's decision to the Hawai'i Intermediate Court of Appeals (**ICA**). Id. On May 21, 2009, the State filed an application to transfer the appeal to the Hawai'i Supreme Court, which was granted on June 10, 2009. Id. On March 25, 2010, the supreme court issued an Opinion, affirming in part and reversing in part the Circuit Court's decision and holding, *inter alia*, that:

> [T]he circuit court did not err in concluding that a retired state and county government employee's health benefits are protected by article XVI, section 2 of the Hawai'i Constitution as "accrued benefits" arising from a retiree's membership in the employees' retirement system; and (2) the circuit court erred by concluding that HRS Chapter 87A

requires that retiree health benefits reasonably approximate those of active workers.

Everson, 122 Hawai'i at 404, 228 P.3d at 284.

C.    Resumption of the Class Action

After the supreme court's decision in Everson, the stay in the instant case was lifted, and the proceedings resumed before the Circuit Court. Following class certification, and the filing of a Second Amended Complaint,[9] the parties filed cross-motions for partial summary judgment on the merits.

Appellants' motion, filed on December 10, 2012, argued primarily that: (1) as held in Everson, retirees' accrued health benefits are constitutionally protected benefits under article XVI, section 2 of the Hawai'i Constitution; (2) the benefits provided by the EUTF for retirees are not "substantially equivalent," but rather are inferior as a matter of law, to those provided to active employees; and (3) the retirees' loss of parity with active employees on health care benefits constitutes a diminishment and impairment of the retirees' accrued benefits in violation of article XVI, section 2.

---

[9]     The Second Amended Complaint, which was filed on December 15, 2010, includes four counts, seeks declaratory and injunctive relief, as well as damages, and alleges, inter alia, that:

> 47. Defendants have violated the constitutional, contractual and statutory rights of Plaintiffs under Article XVI and HRS Chapters [sic] 87 by not providing health care benefits to Retirees and their dependents that are equivalent to those provided to Active Workers and their dependents.
>
> 48. Defendants have violated Retirees' constitutional rights under Article XVI and their contractual rights under HRS Chapters [sic] 87 and other agreements by not providing health care benefits to Retirees and their dependents that are equivalent to other employee-beneficiaries and dependent beneficiaries, regardless of age.

In opposition, the State argued that: (1) retirees did not have parity with active employees prior to July 1, 2003, as the majority of active employees were in different plans operated by the unions; (2) the EUTF has not impaired retiree health benefits, as retirees are provided with the same or better health benefits as they had prior to July 1, 2003; (3) retirees are not entitled to the same benefits as active employees, by statute, by contract, or by the Constitution; (4) overall, retirees are receiving substantially equivalent health benefits as active employees; (5) providing retirees with benefits identical to those offered to active employees would diminish the retirees' benefits, as providing identical benefits would likely result in the loss of the full integration method of Medicare coordination and the favorable prescription drug plan; (6) the base monthly contribution caps in HRS Chapter 87A do not diminish accrued retiree health benefits[10] and do not violate HRS § 87-6(c);[11] and (7) accrued retiree health benefits may be reasonably modified, provided that any disadvantageous changes are balanced by advantageous changes.

The State's cross-motion, filed on July 25, 2013, argued that: (1) the State has not violated Appellants' constitutional or contractual rights because the EUTF's retiree health benefit plans since 2003 have provided coverage that is

---

[10]     The "contribution caps" in HRS Chapter 87A provide, *inter alia*, that health fund contributions from the State or counties shall not exceed the actual cost of health benefit plans for retirees, and that plans are not required to cover increased benefits for retirees above those initially contracted for.  HRS § 87A-33 (2012).

[11]     HRS § 87-6(c) indicated that "subject retirees" would not have to contribute to the Health Fund for their health benefits plans.

substantially the same, if not better, than what retirees had before then; (2) the State has not violated Appellants' statutory rights as there was no intent to create vested rights under HRS Chapter 87 and/or the State has not violated the provisions of HRS Chapter 87; (3) the State is not liable for negligence because the State has not breached any constitutional, statutory, or contractual duty; (4) Appellants' claim that retirees must have the same health benefits as active employees is wrong; and (5) *res judicata* and collateral estoppel do not preclude granting the State's motion.

In opposition, Appellants argued: (1) *res judicata* and collateral estoppel bar the State from re-litigating whether there was parity between active employees' and retirees' health benefits and that this lack of parity violated article XVI, section 2; (2) Judge Border determined, in conjunction with class certification, that constitutionally protected health benefits accrue at the time of vesting, which is during employment rather than at pre-enrollment in the retiree health plan, and that Judge Border's determination is binding law of the case; (3) class members' accrued health benefits were diminished because prior to July 1, 2003, retirees enjoyed parity with respect to active employees' health benefits, which was mandated by Chapter 87, and they no longer have such parity; (4) the relevant comparison is whether the retirees receive the same health benefits as the active employees, not whether they receive the same health benefits as had been provided through the Health Fund; and (5) even if the EUTF and Health Fund retiree health benefits are

compared, the retirees' EUTF plans are inferior to those offered by the Health Fund.

The four Counties each filed joinders in the State's opposition to Appellants' motion for partial summary judgment, as well as joinders in the State's motion for partial summary judgment. Appellants filed a reply memorandum in support of their partial summary judgment motion. The State also filed a reply memorandum in support of its partial summary judgment motion, which the Counties joined. On October 30, 2013, a hearing was held on the cross-motions and the matter was taken under advisement.

On October 16, 2014, the Circuit Court entered the Summary Judgment Order. The Circuit Court concluded, *inter alia*, as follows:

> The dispositive question for this court is whether Plaintiffs' health benefits have been diminished or impaired in light of the 2001 legislative amendment that no longer required health benefits to be equally available to all employee-beneficiaries. As discussed below, the court concludes that although the EUTF is not required to provide retirees with the same or equivalent health benefits as active employees, retirees' health benefits have not been impermissibly reduced because state and county retirees receive the same or substantially the same health benefits under the EUTF that they received under the PEHF. As such, there has been no diminishment or impairment of retirees' accrued health benefits.
>
> . . . .
>
> Under the PEHF, the law required that health benefits had to be "equally available to all employee-beneficiaries and dependent-beneficiaries selecting the [health] plan, regardless of age." HRS § 87-22(b). The term "employee-beneficiary" included active and retired employees. Thus, on its face and by definition, HRS § 87-22(b) required that the same health benefits had to be equally available to all employees, active and retired alike.
>
> In 2001, when the legislature removed the longstanding requirement that health benefits had to be equally available to all employee-beneficiaries and replaced the PEHF with the EUTF to "establish a single health benefits delivery system

for State and county employees, retirees, and their dependents," the legislature did not intend for public employees or retirees "to suffer any diminishment or impairment of their existing health benefits." See Conf. Com. Rep. 124 on S.B. 1044 at 1097-1098.

Under the EUTF, it is undisputed that retirees do not receive the same health benefits as active employees receive. Instead, retired employees are enrolled in separate health plans, some of which contain different services and inferior levels of coverage, co-pays, maximums and deductibles than active employees receive under their selected health plans. . . . .

While [] there are differences in the levels of coverage between the PEHF and EUTF HMSA plans for retirees, accrued health benefits for retirees have not been reduced, diminished or impaired since implementation of the EUTF. The differences in the levels of coverage between the EUTF and PEHF for retirees have remained the same or are substantially the same and, therefore, do not amount to a diminishment or impairment of health benefits for retirees.

As the Alaska Supreme Court noted in Duncan v. Retired Public Employees of Alaska, Inc., constitutionally protected "[h]ealth benefits must be allowed to change as health care evolves." "Health benefits can be modified so long as the modifications are reasonable, and one condition of reasonableness is that disadvantageous changes must be offset by comparable new beneficial changes."

The court concludes that the differences in the levels of coverage as between the PEHF and the EUTF HMSA plans for retirees, as illustrated above,[12] are reasonable. In addition, there is no evidence that the differences in the levels of coverage are disadvantageous to retirees on a group-wide basis. Rather, many of the benefits under the EUTF plans are the same or substantially the same than what retirees received under the PEHF plans.

. . . .

To reiterate, the dispositive issue here is whether Plaintiffs' accrued benefits, defined under Everson as health benefits in a health benefits plan for retirees, have been diminished or impaired because the EUTF is not required to provide the same health benefits to active and retired employees. The court concludes that the 2001 legislative amendment to the PEHF and the EUTF that removed the requirement that benefits had to be equally available to all employee-beneficiaries did not amount to a reduction in health benefits for retirees. Retirees receive the same or substantially the same health benefits under the EUTF that

---

[12]    The court's Summary Judgment Order contains examples, charts, and descriptions of specific health benefits and health plan coverage comparisons that are omitted here.

they received under the PEHF. Accordingly, Plaintiffs' accrued health benefits have not been diminished or impaired.

. . . .

Finally, the court is not persuaded by Plaintiffs' argument that res judicata and collateral estoppel preclude Defendants from litigating the issue of lack of parity and whether there has been a violation of Article XVI, section 2.

. . . .

The claims and issues raised by Plaintiffs before the EUTF and appealed to Judge Hifo involved questions concerning chapter 87A and Article XVI, section 2. The Supreme Court in Everson did not address the question of parity of benefits under chapter 87 and specifically noted in its decision that Plaintiffs did not assert that any of the pertinent 2001 amendments to the HRS (e.g. HRS § 87-22(b)) were unconstitutional in light of Article XVI, section 2. The claims and the issues presented by Plaintiffs in the agency appeal that led to the Supreme Court's decision in Everson simply did not involve Plaintiffs' entitlement to parity of benefits under chapter 87 and whether Plaintiffs' benefits have been diminished or impaired under Article XVI, section 2.

(Citations and original footnotes omitted.)

On November 3, 2014, Appellants moved for reconsideration or, in the alternative, leave to file an interlocutory appeal, which the State and Counties opposed. On December 16, 2014, the Circuit Court entered the Order Denying Reconsideration, which also denied Appellants' request for certification of an interlocutory appeal. On December 29, 2014, the parties stipulated to dismiss without prejudice the remaining claims in Appellants' Second Amended Complaint, which were based on HRS §§ 87A-33 through 87A-36. On January 30, 2015, final judgment was entered in favor of the State and against Appellants, pursuant to Hawai'i Rules of Civil Procedure Rule 58.[13]

---

[13] The Judgment collectively disposes of all four claims for relief set forth in the Second Amended Complaint by: resolving what the Judgment
(continued...)

On February 23, 2015, Appellants filed a notice of appeal, and, on March 5, 2015, the State timely cross-appealed. On April 23, 2015, the State filed an application seeking a mandatory transfer from the ICA to the Hawai'i Supreme Court, pursuant to HRS § 602-58(a)(1) (Supp. 2015) (question of fundamental public importance) and a discretionary transfer, pursuant to HRS § 602-58(b)(1) (Supp. 2015) (question of first impression). Appellants joined in the transfer request, which was granted on May 20, 2015.

III. POINTS OF ERROR

Appellants raise three points of error on appeal, contending that the Circuit Court erred in:

(1) denying Appellants' motion for partial summary judgment and granting the State's motion for partial summary judgment, and determining that the accrued health benefits protected under Everson are only those that the Health Fund provided to retirees and their beneficiaries before the EUTF began operating and not the health benefits that Appellants received while employed, which the State and Counties committed to continuing to provide Appellants upon retirement;

(2) granting the State's motion for partial summary judgment, because there were genuine issues of material fact as to whether the health benefits that retirees receive under the

---

[13] (...continued)
describes as Appellants' "Parity" allegations and "Regardless of Age" allegations (by entering judgment in favor of the State and against Appellants); reciting the dismissal without prejudice of Appellants' "Contribution Cap" allegations; and expressly ordering that "[t]here are no remaining claims, parties or issues in this case but to the extent any do remain, they are hereby dismissed."

EUTF are the same or substantially the same as the health benefits retirees received under the Health Fund; and

(3) ruling that *res judicata* and collateral estoppel do not preclude the State from relitigating (a) whether there is a lack of parity between active workers and retirees, and (b) whether the EUTF has impaired Appellants' accrued benefits in violation of the Non-Impairment Clause by providing benefits that are inferior to those the Appellants received (in both the union-sponsored plans and the HMSA "general" PEHF plan) prior to retirement.

The State raises the following points of error on cross-appeal; however, the State submits that it is necessary to reach these issues only if the Court rules in Appellants' favor on Appellants' appeal.  The State contends that the Circuit Court erred in:

(1)   interpreting HRS § 87-22(b), which stated that "any respective plan shall be equally available to all employee-beneficiaries and dependent-beneficiaries selecting the plan regardless of age," as "requir[ing] that the same health benefits had to be equally available to all employees, active and retired alike;" and

(2)   concluding that "retired employees are enrolled in separate health plans, some of which contain different services and inferior levels of coverage, co-pays, maximums and deductibles than active employees receive."

IV. APPLICABLE STANDARDS OF REVIEW

"Statutory interpretation is a question of law reviewable de novo." State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted).

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cnty. of Honolulu, 114 Hawai'i 184, 193, 159 P.3d 143, 152-53 (2007)).

"On appeal, the grant or denial of summary judgment is reviewed de novo." Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008) (citations omitted).

"Issues of constitutional interpretation present questions of law that are reviewed de novo." Blair v. Harris, 98 Hawai'i 176, 178, 45 P.3d 798, 800 (2002).

Claim preclusion and issue preclusion are separate doctrines that involve distinct questions of law which are reviewed de novo under the right/wrong standard. E. Sav. Bank, FSB v. Esteban, 129 Hawai'i 154, 157-58, 296 P.3d 1062, 1065-66 (2013).

V.   DISCUSSION

A.   *Everson, Parity, & Constitutionally-Protected Benefits*

Appellants contend, *inter alia*, that in granting the State's motion for partial summary judgment, the Circuit Court misread Everson because the Circuit Court concluded that a lack of parity between retiree health benefits and those of active workers was immaterial to the issue of whether Appellants' accrued health benefits were diminished or impaired in violation of article XVI, section 2 of the Hawai'i Constitution. Appellants suggest that, because the Circuit Court compared the benefits that retirees receive under the EUTF with the benefits that retirees had received under the Health Fund, the Circuit Court must have assumed that the retiree health benefits accrue only at the time of retirement. The State disagrees with Appellants' suggestion, arguing that the Circuit Court properly construed Everson and made no decision about when retiree health benefits accrue, and that there was and is no need to decide when retiree health benefits accrue because there has been no diminishment of retiree health benefits. To properly address these conflicting views, this court must examine: (1) what was and was not decided in Everson; and (2) what health benefits are protected by the Non-Impairment Clause. Although we do not agree entirely with Appellants' explanation of the Circuit Court's analysis, we also reject the State's argument that it is unnecessary to consider when retiree health benefits accrue, and by implication what retiree health benefits have been accrued, based on the proposition that there has been no diminishment of

21

retiree health benefits. It is necessary to identify what health benefits are protected in order to answer the question of whether or not those benefits have been diminished or impaired in violation of article XVI, section 2.

1.    Everson

As a preliminary matter, we note that the questions posed in the EUTF Petition underlying Everson sought declaratory rulings with respect to HRS Chapter 87A and article XVI, section 2 of the Hawai'i Constitution. Not surprisingly, as the EUTF Board was created to administer health benefits under HRS Chapter 87A, the EUTF Petition did not seek a ruling regarding retirees' rights under or compliance with HRS Chapter 87. Declining to answer any question requiring an interpretation of the Hawai'i Constitution, the EUTF Board concluded that: (1) HRS Chapter 87A does not require parity between retiree health benefits and active worker health benefits; and (2) the subject EUTF health benefit plans complied with the requirements of HRS Chapter 87A.

The Circuit Court in Everson took up the constitutional issue and concluded that Hawai'i's Non-Impairment Clause protects accrued health benefits, as well as accrued financial benefits such as pension payments. Commenting that the constitutional protection of accrued benefits does not prohibit legislative changes to benefits for prospective employees, the Circuit Court determined that "retirement benefits including those health benefits that became established by the enactment of Chapters 87 and 87A and amendments thereto are protected or vested once accrued." The Circuit Court then turned to the EUTF Board's

interpretation of HRS Chapter 87A, reversed the Board's ruling on the issue of parity between retirees and active workers, and concluded that the reference in HRS § 87A-23 to "similarly situated beneficiary" "invokes comparison between retirees and active employees, not Medicare eligible retirees and early retirees who by age do not yet qualify for Medicare." The Circuit Court in Everson further concluded that, contrary to the EUTF Board's interpretation, pursuant to HRS § 87A-23, health benefits provided to retirees must "reasonably approximate" benefits provided to active employees and some of the benefits provided to retirees did not reasonably approximate those provided to active employees.

The Hawai'i Supreme Court in Everson – after examining the relevant statutory history of the Hawai'i ERS, the framers' intent in adopting the Non-Impairment Clause, the history of the Health Fund and the transition to the EUTF, and the plain language of article XVI, section 2 – rejected the State's argument that the Non-Impairment Clause only applies to financial benefits such as pensions. Everson, 122 Hawai'i at 407-15, 228 P.3d at 287-95. More specifically, this court held that "it is those 'accrued benefits' arising from *membership* in an ERS, and not simply those benefits provided by an ERS, that is protected by article XVI, section 2." Id. at 416, 228 P.3d at 296. The court made clear, however, that:

> As we observed in Kaho'ohanohano, the framers of article XVI, section 2 intended to provide the legislature with flexibility to make changes to the system so long as the changes neither diminished nor impaired a member's accrued benefits. Accordingly, although article XVI, section 2 provides protection for any additional benefits that the

> legislature may decide to provide to state and county government employees as members of an ERS, consistent with the framers' intent, the legislature may also reduce benefits as to persons already in the system in so far as their *future services* were concerned, but it could not, however, reduce the benefits attributable to *past services*.

Id. (citations, quotation marks, ellipsis, and brackets omitted).

Regarding the constitutional protection of a retiree's health benefits, the court stated:

> [W]e hold that a retired employee's health benefits that are included in a health benefits plan falls within the constitutional protection contemplated by article XVI, section 2 inasmuch as HRS § 87A-21(b) clearly and unambiguously conditions a retired state or county government employee's eligibility for health benefits on, *inter alia*, being a retired member of the employees' retirement system.

Id. at 417, 228 P.3d at 297 (citations, quotation marks, and brackets omitted).

In addition, the court explained: "[T]he issue in this case is whether the health benefits that are provided by a 'carrier' and included in a health benefits plan are protected from diminishment or impairment once 'accrued' by article XVI, section 2 of the Hawai'i constitution." Id. at 418, 228 P.3d at 298. The court rejected the State's contention that retiree health benefits are not constitutionally protected "accrued benefits," which the State based in part on the assertion that "neither the level nor type of retiree health benefits accumulate or grow based on the number of years that an employee works." Id. at 418, 228 P.3d at 298. The court emphasized that:

> [A]rticle XVI, section 2 was intended in part to provide the legislature with flexibility to make future changes to the retirement system, which included changing the benefits that are provided to members of an ERS, as long as the changes did not reduce an employee's benefits attributable to past services. There is also nothing to suggest that any

> additional benefits, once "accrued," cannot be provided protection from diminishment or impairment pursuant to article XVI, section 2 if the government desires to maintain the system in good faith with the employees of the government.  Therefore, [the State's] interpretation of the word "accrued" is unpersuasive.
>
> Instead, . . . the word "accrued" was added before "benefits" to refer to a particular point in time in order to ensure that any future change to the benefits provided to a retired state or county employee would not diminish or impair those benefits that have already "accrued."  As such, with regard to future changes, the legislature could reduce benefits as to (1) new entrants into a retirement system, or (2) as to persons already in the system in so far as their future services were concerned.  *It could not, however, reduce the benefits attributable to past services.*  Therefore, [the State's] assertions are unpersuasive, and we hold that health benefits for retired state and county employees constitute "accrued benefits" pursuant to article XVI, section 2 of the Hawai'i Constitution.

Id. at 419, 228 P.3d at 299 (citations, footnotes, some quotation marks, and brackets omitted).  Although stressing that the State could not reduce protected benefits, including accrued health benefits attributable to past services, the court declined to specifically address when retirement health benefits are accrued and what retiree health benefits must be deemed as accrued benefits.  Compare id. at n.15, 228 P.3d at 299 n.15, with id. at 422-23, 228 P.3d 302-03 (Acoba, J., concurring).

The supreme court in Everson then turned to the Circuit Court's conclusion that HRS Chapter 87A requires that retiree health benefits reasonably approximate those of active workers and firmly rejected it.  Id. at 419-21, 228 P.3d at 299-301.  The court looked to the 2001 amendments to the HRS, which omitted or changed the prior statutory language that had required the Health Fund to provide retirees with "reasonably approximate" benefits as active employees.  Id. at 420-21, 228 P.3d at 300-01 (comparing the pre-2001 language of HRS § 87-22(b) with the 2001

amended version of HRS § 87-22(b), and HRS Chapter 87A, including HRS § 87A-23). The court concluded:

> [W]e hold that the words "similarly situated beneficiary not eligible for medicare," as those words are used in HRS § 87A-23(1), or "similarly situated employee-beneficiary not eligible for medicare," as those words are used in HRS § 87A-23(3), invoke a comparison between Medicare eligible retirees and retirees who do not qualify for Medicare. Because we hold as such, HRS Chapter 87A does not require the Board of the EUTF to provide health benefits plans to retirees whose benefits "reasonably approximate" those benefits provided to active employees.

Id. at 421, 228 P.3d at 301 (citations and footnote omitted).

### 2.    The Accrual of Constitutionally Protected Benefits

Article XVI, section 2 of the Hawai'i Constitution provides:

> Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired.

(Emphasis added.)

As noted above, in order to determine whether constitutionally protected benefits have been diminished or impaired, there must be a comparison between the "accrued benefits" that an employee is entitled to and the benefits that the employee has received. In Everson, the supreme court explained that the Non-Impairment Clause "clearly and unambiguously" provides that "accrued benefits" arise from a State or county employee's membership in an ERS. 122 Hawai'i at 415, 228 P.3d at 295. The court observed that this membership is mandatory for all such employees upon their entry or re-entry into the service of the State or a county. Id. (citing 2 Proceedings of the Constitutional Convention of Hawai'i of 1950,

at 495; HRS § 88-42 (Supp. 2008)).[14]  It is with this entry into service, and this mandatory membership in an ERS, that an employee becomes eligible to receive the benefits arising from ERS membership, provided that the employee satisfies the condition(s) precedent to receive them.

As this court observed in Kaho'ohanohano v. State, 114 Hawai'i 302, 347, 162 P.3d 696, 741 (2007), Alaska's constitution contains a provision that is "nearly identical in wording and substance" to article XVI, section 2 of the Hawai'i Constitution.[15]  Accordingly, the court in Kaho'ohanohano cited Alaska's case law as "instructive in interpreting our own clause."  Id.  Although the issue of when an employee's constitutionally protected benefits accrue was not squarely before the court in Kaho'ohanohano, the court twice referenced that the Supreme Court of Alaska has determined that such benefits vest or accrue upon the employee's employment and enrollment in an ERS, rather than when the employee becomes eligible to receive the benefits.  Id. at 347-48, 162 P.3d at 741-42 (citing, e.g., Hammond v. Hoffbeck, 627 P.2d 1052, 1057 (Alaska 1981) (holding that benefits under Alaska's ERS "are in the nature of deferred compensation and that the right to such

---

[14]     The Everson court's discussion of the adoption of article XVI, section 2 at the 1950 Constitutional Convention, 122 Hawai'i at 408-13, 228 P.3d at 288-93, which is largely taken from this court's earlier examination of those convention proceedings in Kaho'ohanohano v. State, 114 Hawai'i 302, 162 P.3d 696 (2007), fleshes out the considerations and concerns that led to the final version of the constitutional amendment.

[15]     Article XII, section 7 of the Alaska Constitution provides: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship.  Accrued benefits shall not be diminished or impaired."  See Kaho'ohanohano, 114 Hawai'i at 347, 162 P.3d at 741.

benefits vests immediately upon an employee's enrollment in that system"); Municipality of Anchorage v. Gallion, 944 P.2d 436, 440-41 (Alaska 1997) (affirming that the right to benefits vests when the employee enrolls in an ERS, rather than when he or she becomes eligible to receive benefits)); see also Duncan v. Retired Pub. Emps. of Alaska, Inc., 71 P.3d 882, 886 (Alaska 2003). As the Alaska court determined, that conclusion is most consistent with the plain meaning of the constitutional provision, as well as the purpose for its adoption. Hammond, 627 P.2d at 1056. Moreover, pursuant to the constitutional mandate, "these benefits are regarded as an element of the bargained-for consideration given in exchange for an employee's assumption and performance of the duties of his employment." Id. The same rationale applies to Hawai'i's Non-Impairment Clause and the intent and purpose of its framers. We therefore hold that benefits arising from membership in a Hawai'i ERS, including retiree health benefits, accrue upon an employee's enrollment in the ERS, subject to any conditions precedent in place at the time of enrollment that must be satisfied before receiving the benefits.[16]

---

[16] As the delegates to Hawai'i's 1950 Constitutional Convention "clearly manifested the intent to adopt and follow the then New York system," the Hawai'i Supreme Court has also looked to New York's interpretation of its seminal constitution. Everson, 122 Hawai'i at 410, 228 P.3d at 290 (citation omitted). Although not initially faced with the challenge of a system-wide benefit modifications during an employee's continued course of employment, New York's highest court has adopted an interpretation of New York's non-impairment clause, which is that it protects the benefits promised at the time of the employee's entry or re-entry into New York's ERS. Mutterperl v. Levitt, 393 N.Y.S.2d 837, 839 (N.Y. Sup. Ct. 1975) aff'd, 363 N.E.2d 587 (N.Y. 1977) (citations omitted); see also, e.g., Civil Serv. Emps. Ass'n Inc., Local 1000 v. Regan, 525 N.E.2d 1 (N.Y. 1988). We note, however, that New York courts and Hawai'i courts have diverged on the issue of whether health benefits are constitutionally protected. See Everson, 122 Hawai'i at 417-18,
(continued...)

However, as the Alaska court and others have pointed out, rigid application of a concept such as "accrued benefits" and "vested rights" is inconsistent with and inadequate to provide the flexibility that legislatures need to deal with changing economic and social realities. Hammond, 627 P.2d at 1057-58 (citing Betts v. Bd. of Admin. of the Pub. Emps.' Ret. Sys., 582 P.2d 614, 617 (Cal. 1978); Allen v. City of Long Beach, 287 P.2d 765, 767 (Cal. 1955); Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 197 A.2d 169, 174 (N.J. 1964); R. Cohn, Public Employee Retirement Plans: The Nature of the Employees' Rights, 1968 U. Ill. L. Forum 32, 40-51 (1968)). Indeed, as this court has repeatedly noted, such flexibility is also part of the intent and purpose of Hawai'i's Non-Impairment Clause:

> [A]rticle XVI, section 2 was intended in part to provide the legislature with flexibility to make future changes to the retirement system, which included changing the benefits that are provided to members of an ERS, as long as the changes did not reduce an employee's benefits attributable to past services. There is also nothing to suggest that any additional benefits, once "accrued," cannot be provided protection from diminishment or impairment pursuant to article XVI, section 2 if the government desires to maintain the system in good faith with the employees of the government.

Everson, 122 Hawai'i at 419, 228 P.3d at 299 (citations, quotation marks and brackets omitted) (citing Kaho'ohanohano, 114 Hawai'i at 341, 162 P.3d at 734; 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 495); see also

---

[16](...continued)
228 P.3d at 297-98 (discussing Lippman v. Bd. of Educ., 487 N.E. 897 (N.Y. 1985)). We decline to address the effects of re-entry into service, and re-enrollment in the ERS, on a Hawai'i employee's "accrued benefits," as those issues have not been argued in this case.

Chun v. Emps.' Ret. Sys., 61 Haw. 596, 605-06, 607 P.2d 415, 421 (1980) (adopting a 1950 Constitutional Convention Committee of the Whole Report, which states that the Non-Impairment Clause "would not limit the legislature in making general changes in a system, applicable to past members, so long as the changes did not necessarily reduce the benefits attributable to past service" (citation omitted; emphasis added)).

In light of these competing imperatives, the Alaska court adopted the following analysis in Hammond:

> An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.
>
> . . . .
>
> The comparative analysis of disadvantages and compensating advantages must focus on the particular employee whose own vested pension rights are involved. It has been said that the offsetting improvement must also relate generally to the benefit that has been diminished.

Hammond, 627 P.2d at 1057 (citations and quotation marks omitted). Accordingly, the Alaska court held: "[T]he fact that rights in [the Alaska ERS] vest on employment does not preclude modifications of the system; that fact does, however, require that any changes in the system that operate to a given employee's disadvantage must be offset by comparable new advantages to that employee." Id. (footnote omitted).

More recently, in a case dealing directly with the issue of retiree "health insurance benefits," the Alaska Supreme Court reiterated the principles stated in Hammond and quoted the above, except that it overruled its prior statement that the comparative analysis of advantages and disadvantages is made on an individual basis, as opposed to focusing on a group of employees. Duncan, 71 P.3d at 886, 891-92. The Duncan court wrestled with the question of how to identify what benefits are protected against diminishment. The State of Alaska argued, based on practical considerations (i.e., the escalating cost of health care), that "retirees should be limited to whatever the dollar contribution in force at the time of his/her retirement can purchase," in essence that "the accrued benefit that is constitutionally protected is the highest monthly premium paid by the public employer during the employee's employment, rather than the coverage provided." Id. at 888 (quotation marks and brackets omitted). The State of Hawai'i makes a parallel argument here, contending that Appellants may be entitled to "actuarial equivalence" with the health benefits available to them under the Health Fund.

Although the State cites the Duncan court to support this contention, its argument cleaves off an essential part of the Duncan court's holding, which is that the "equivalent value" referenced by the Alaska court requires a comparison of benefits provided to employees, not merely a comparison of the costs to the State. Relying in part on a Michigan court's analysis, Duncan laid out the constitutional parameters as follows:

In view of the ever changing nature of medical care, the Michigan court observed that the idea of a specific bundle of medical benefits, unchanging over time, is probably illusory. Yet the court held that the state was not free to radically change the nature of health benefits that had vested in the employee group in question. The court concluded:

> The rights which have vested in Plaintiffs are not rights to receive exactly the same package of health benefits which were offered at vesting but rather a right to a reasonable health benefit package, one which is in keeping with the mainstream of such packages, as they are negotiated and implemented for similarly situated active employees over time. This—not a "frozen" package of benefits and cost containment measures—is the meaning of "hospital, medical-surgical, and sick care benefits" mandated by the Legislature. This is the "central undertaking" to which Plaintiffs could reasonably believe they have entitlement, based on the State's promise.

Like the Michigan circuit court, we believe that health insurance benefits must be allowed to change as health care evolves. We also believe that the economic realities of administering health care coverage would prevent making such changes if an individualized equivalency analysis were used. We reach this conclusion reluctantly in light of Hoffbeck's holding that changes in other retirement benefits must be analyzed on an individual basis, a result that is implied by article XII, section 7, which equates retirement benefits with contract rights. Recognizing that analysis of health insurance changes from a group standpoint is necessary, but in some degree inconsistent with analogous constitutionally based precedent, we believe that it is advisable to express a number of cautions that may help to guide any equivalency analysis of health coverage changes.

At the outset, we reiterate Hoffbeck's admonition that equivalent value must be proven by reliable evidence. Just as with an individual comparative analysis, offsetting advantages and disadvantages should be established under the group approach by solid, statistical data drawn from actual experience—including accepted actuarial sources—rather than by unsupported hypothetical projections. We also believe that, apart from the individualized approach, the other guidelines concerning equivalency analysis set out in Hoffbeck should continue to be generally applicable. Further, we reiterate that equivalent value must be proven by a comparison of benefits provided—merely comparing old and new premium costs does not establish equivalency.[17]

_____

[17]     The Duncan court here references, in a footnote, its earlier discussion in which the court specifically rejected the State's argument that the non-impairment clause merely protected against the diminishment of the premium payments made on behalf of the retirees, as opposed to the health

(continued...)

> . . . .
> [O]ur opinion in this case should not be interpreted as
> approving major deletions in the types of coverage offered
> during an employee's term. Coverage of a particular disease
> or condition should not be deleted, even though other
> coverage might be improved, if the deletion would result in
> serious hardship to those who suffer from the disease or
> condition in question. . . . [W]e believe that the coverage
> that is offered should generally be "in keeping with the
> mainstream" of health insurance packages offered to active
> public employees in terms of scope and balance.

Duncan, 71 P.3d at 891-92 (citations, original footnotes, quotation marks, ellipsis and brackets omitted; format altered; emphasis added).[18]

This flexible approach is broadly congruent with the intent and purpose of article XVI, section 2 of the Hawai'i Constitution and the prior decisions of this court. It does not, however, fully address Appellants' contention that the accrued retiree health benefits protected under the Non-Impairment Clause necessarily include "the right to continue to receive a [health benefits] package comparable to their still-active former co-workers for free or at a reduced cost," depending on their years of service.

---

[17](...continued)
benefits provided to the employees. Duncan, 71 P.3d at 892 n. 43; see also id. at 888-89.

[18]     Perhaps due to its departure from the individualized approach it had espoused in Hammond, the Duncan court also addressed various potential scenarios in which either an individual might show that changes in health benefits result in a "serious hardship that is not offset by comparable advantages" or changes might "predictably cause hardship to a significant number of beneficiaries who cannot at the time of the change be specifically identified." Duncan, 71 P.3d at 892 (distinguishing these scenarios from the evidence in that case amounting to a detriment of several hundreds of dollars per year). Those issues are not before this court and we express no opinion on the Duncan court's suggested handling of such circumstances.

It is undisputed that, prior to July 1, 2003, pursuant to HRS Chapter 87-1 (repealed), both active and retired State and County employees were defined as "Employees," and included as "Employee-Beneficiaries" for the purposes of the Health Fund law. Additionally, pursuant to HRS § 87-21 (repealed), the Health Fund Board was directed to "administer and carry out the purpose of the fund," which included, pursuant to HRS § 87-3(a) (repealed), "providing employee-beneficiaries and dependant beneficiaries with a health benefits plan." As such, the Board was permitted to contract for certain health benefits plans, "provided that benefits provided under any respective plan shall be equally available to all employee-beneficiaries . . . selecting the plan regardless of age." HRS § 87-22(b) (emphasis added) (repealed). In addition, when a supplemental health benefits plan was established to complement rather than duplicate Medicare benefits, the Health Fund law included the following condition:

> The benefits available under the plan, when taken together with the benefits available under the federal Medicare plan, as nearly as is possible, shall approximate the benefits available under the plans set forth in section 87-22. If, for any reason, a situation develops where the benefits available under the supplemental plan and the federal Medicare plan substantially differ from those that would otherwise be available, the board may correct this inequity to assure substantial equality of benefits[.]

HRS § 87-27(3) (emphasis added) (repealed).

Thus, it appears that, prior to its amendment and repeal, HRS Chapter 87 provided "substantial equality of benefits" to all State and County "Employees" who were entitled to receive them, whether they were active workers or retirees,

which has been described during the course of this litigation as "parity of benefits." We nevertheless hold that article XVI, section 2 of the Hawai'i Constitution protects accrued retiree health *benefits*, not *parity* of health benefits. To conclude otherwise would be wholly inconsistent with the language of the Non-Impairment Clause and the dual purpose of its framers who sought to protect government workers' accrued benefits, while providing future legislatures "with flexibility to make changes to the system so long as the changes neither diminished nor impaired a member's accrued benefits." Everson, 122 Hawai'i at 416, 228 P.3d at 296.

Clearly, the Legislature's intent in replacing the Health Fund with the EUTF was to both fully protect retirees' accrued health benefits and deal with the spiraling costs associated with the Health Fund. Id. at 416-17, 228 P.3d at 296-97.[19] We cannot conclude that this legislative action violates article XVI, section 2, solely because of a lack of parity with active workers, even if Appellants' accrued health benefits were not otherwise diminished or impaired. Accordingly, the Circuit Court did not err in concluding that the EUTF is not required, as a matter of law, to provide Appellants with the same benefits as active employees.

---

[19]     In construing HRS Chapter 87A, Everson noted that, in enacting that statute, the Legislature eliminated the parity requirement that had been included in HRS Chapter 87. Everson, 122 Hawai'i at 421, 228 P.3d at 301. The supreme court further noted that the constitutionality of the statutory amendments set forth in HRS Chapter 87A was not before the court. Id. at 421 n.17, 228 P.3d at 301 n.17.

However, we decline to adopt the Circuit Court's analysis that Appellants' accrued retirement health benefits have not been diminished or impaired in violation of article XVI, section 2, as a matter of law,[20] based on a summary adjudication that the health benefits that retirees receive under the EUTF are the same or substantially the same as the health benefits retirees received under the Health Fund. Even assuming, *arguendo*, that the health benefits that Appellants receive under the EUTF are the same or substantially the same as the health benefits that earlier retirees received under the Health Fund, as the Alaska court observed, the idea that "accrued health benefits" refers to "a specific bundle of medical benefits, unchanging over time, is probably illusory." Duncan, 71 P.3d at 891.

Instead, we hold that the *starting place* for a determination of Appellants' accrued health benefits is the retiree health benefits, included in a Health Fund benefits plan, that were promised to Appellants at the time of their enrollment in the ERS, as these are the benefits that, in the first instance, arise from their membership in the ERS. See, e.g., Hammond, 627 P.2d at 1056. As stated at the 1950 Constitutional Convention, the report of which was adopted in Chun, and reaffirmed in Kaho'ohanohano and Everson, although the

---

[20] As addressed in Section V.B. below, we conclude that, *inter alia*, the Declaration of Appellants' expert witness and the accompanying analysis raised a genuine issue of material fact and, therefore, the State was not entitled to judgment as a matter of law.

Legislature can reduce benefits as to new entrants into the ERS, as well as for persons already in the ERS system to the extent that those benefits are attributable to their future services, benefits that are attributable to past services cannot be reduced. Everson, 122 Hawai'i at 409, 228 P.3d at 299; Kaho'ohanohano, 114 Hawai'i at 342, 162 P.3d at 736; Chun, 61 Haw. at 605-06, 607 P.2d at 421; Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330 (1960). We hold that the health benefits identified above - i.e., the retiree health benefits, included in a Health Fund benefits plan, that were promised at the time of enrollment in the ERS - are attributable to past services and shall not be diminished or impaired.

We further hold, however, that Appellants' constitutionally protected accrued retiree health benefits are not an exact package of health benefits which were offered in a Health Fund health benefits plan, fixed as of a certain date, unchanged and unchangeable over time. See Duncan, 71 P.3d at 891; see also, e.g., Everson, 122 Hawai'i at 409, 228 P.3d at 289. The EUTF is not free to change, to Appellants' disadvantage, the nature and/or core undertakings of the health benefits that were promised to retirees under the Health Fund. The benefits provided should generally be "in keeping with the mainstream" of health insurance packages offered to active public employees in terms of scope and balance. See Duncan, 71 P.3d at 891-92. Appellants' accrued retirement health benefits

37

constitute a reasonable health benefits package that Appellants could reasonably believe they were entitled to, based on the State's promises at the time of enrollment in the ERS, and based on promises of additional retirement health benefits made by the State and Counties,[21] if any, during their course of employment. See, e.g., Everson, 122 Hawai'i at 419, 228 P.3d at 299.

Offsetting advantages and disadvantages must take into account how changes to health benefits impact retirees, as well as the government fisc. See Duncan, 71 P.3d at 891-92. In other words, considering the health benefits included in the health benefits plan offered by the Health Fund as the starting place, the "equivalent value" of accrued retirement health benefits must be viewed from the beneficiaries' viewpoint, and not simply in consideration of the cost to the State. As explained in Duncan, "equivalent value must be proven by a comparison of benefits provided-merely comparing old and new premium costs does not establish equivalency." Duncan, 71 P.3d at 892.

We agree with the Duncan court that this flexible standard should not be interpreted as approving major deletions in the types of coverage offered during an employee's term. Coverage of a particular disease or condition should not be deleted, even though other coverage might be improved, if the

---

[21]     We reject Appellants' argument that accrued health benefits include enhanced or improved benefits that may have been received by employees enrolled in union-sponsored plans. Such benefits were never available to retirees, not promised by the State to future retirees, and made available through the unions' contributions to and particularized negotiations for the health benefits coverage.

deletion would result in serious hardship to those who suffer from the disease or condition in question.  Nor should barriers to timely delivery of an evolving standard of care be erected in the name of efficiency or cost-savings.

Although we have held that article XVI, section 2 protects accrued retirement health benefits, not *parity* of health benefits, a comparison to the health benefits offered to active employees is not irrelevant or wholly immaterial, as a measure of the reasonableness of any changes made to retirement health benefits over time.  Finally, unreasonable changes to the retirement health benefits provided to Appellants by the Health Fund, *e.g.*, disadvantages not offset by comparable advantages, may be considered a diminishment or impairment of their accrued retirement health benefits; but it is for the trier-of-fact to determine, in the first instance, whether Appellants have demonstrated that particular changes are unreasonable and constitute a diminishment or impairment of their accrued retirement health benefits.

B.     The Summary Judgment Order

The standard for summary judgment is well-established:

> On appeal, the grant or denial of summary judgment is reviewed *de novo*.  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we

> must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Nuuanu Valley Ass'n, 119 Hawai'i at 96, 194 P.3d at 537

(brackets and citations omitted).

In addition, the Hawai'i Supreme Court has often held:

> Inasmuch as the term "reasonableness" is subject to differing interpretations, it is inherently ambiguous. Where ambiguity exists, summary judgment is usually inappropriate because the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable minds might differ. Reasonableness can only constitute a question of law suitable for summary judgment "when the facts are undisputed and not fairly susceptible of divergent inferences because where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the [trier of fact]." "A question of interpretation is not left to the trier of fact where evidence is so clear that no reasonable person would determine the issue in any way but one." Id. (quoting Restatement (Second) of Contracts § 212 cmt. e (1981). See also Restatement (Second) of Contracts § 212(2) (1981 and Supp. 2005) ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.").

Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 263, 141 P.3d

427, 436 (2006) (some citations, internal quotation marks,

original brackets, and ellipsis omitted).

Here, even with respect to the limited scope of the

Circuit Court's analysis, i.e., whether the retiree health

benefits under the EUTF plans were the same or substantially the

same as what retirees received under the Health Fund plans, the

Circuit Court concluded that: (1) Appellants receive health

benefits under the EUTF plans that are the same or substantially

the same as what they received under the Health Fund plans; and

(2) although there were numerous differences, the differences were "reasonable." In doing so, the Circuit Court appears to have disfavored or disregarded the particularized evidence submitted through and with Appellants' expert's declarations, and favored that of the State's experts' opinions.

On appeal, the State focuses narrowly on the "actuarial equivalence" and cost-effectiveness of the EUTF retiree health plans as compared to the Health Fund retiree plans. The State cites its expert's opinion that it is not "proper or useful to compare two health benefits plans by selectively focusing on certain favorable or unfavorable aspects of each plan," and submits that the differences highlighted by Appellants are immaterial and, therefore, summary judgment was proper. In addition, the State argues that the Circuit Court "was conducting the analysis from Duncan: considering the offset of advantageous changes against disadvantageous ones" and "it is the similarity and the reasonableness of the changes between the two retiree plans that serves as the basis for the circuit court's legal conclusion that no diminishment had occurred . . . [and that Appellants] have failed to show any genuine issue of material fact." This analysis, however, involves a weighing of evidence that is susceptible to divergent inferences as to the reasonableness of the changes and, thus, is inappropriate for summary judgment. See Courbat, 111 Hawaiʻi at 263, 141 P.3d at 436.

Viewing all of the evidence and inferences therefrom in the light most favorable to the nonmoving party, as we must do, we conclude that there is a genuine issue of material fact as to whether the retirement health benefits that Appellants' receive or may be eligible to receive under the EUTF are the same or substantially the same as the health benefits retirees received under the Health Fund.  In addition, on the evidence presented, we cannot conclude that the differences identified in the health benefits plans were reasonable as a matter of law, as the Summary Judgment Order appears to conclude.[22]  More importantly, as discussed above, Appellants' constitutionally protected retirement health benefits accrued upon their entry into the ERS, but were subject to legislative changes, so long as those changes do not necessarily reduce the benefits that have been accrued, as measured by the flexible standard articulated above.  Because genuine issues of material fact remain in dispute, and the State was not entitled to judgment as a matter of law, the grant of partial summary judgment in favor of the State was erroneous.[23]

---

[22]      As set forth above, the Summary Judgment Order includes the following:  "The court concludes that the differences in the level of coverage as between the PEHF and the EUTF HMSA plans for retirees, as illustrated above, are reasonable."

[23]      On remand, it remains Appellants' burden, of course, to demonstrate that the State diminished or impaired their accrued retirement health benefits in violation of the Non-Impairment Clause, in light of the principles articulated here.  Although we have held that the reasonably equivalent value of the EUTF retirement health benefits, as compared to the retirement health benefits Appellants accrued at the time of their enrollment in the ERS (and additional accrued retirement health benefits, if any) must be compared in light of these principles, the trial court is best situated, in the first instance, to determine the method of such comparison, in light of evidence and arguments before it.

C.     Appellants' *Res Judicata*/Collateral Estoppel Argument

Appellants present a rather convoluted argument that, based on certain parts of the Circuit Court's rulings in Everson, *res judicata* and collateral estoppel barred the Circuit Court's "re-litigation" of "(1) whether there was parity between EUTF health benefits to Active Workers and Retirees; and (2) whether the EUTF Board decision that it can provide inferior health benefits to Retirees violates Section 2." The Circuit Court in this case correctly rejected Appellants' argument, which was primarily presented in Appellants' Motion for Reconsideration.

Appellants refer to these two preclusive doctrines interchangeably. However, *res judicata* prohibits a party from relitigating a previously adjudicated claim or cause of action. *Res judicata* is applicable when: (1) the claim or cause of action in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; and (3) the parties to the present action are the same or in privity with the parties in the prior action. See, e.g., Bremer v. Weeks, 104 Hawai'i 43, 53-54, 85 P.3d 150, 160-61 (2004). *Res judicata* prohibits the relitigation of all grounds and defenses which might have been properly litigated in the prior action, even if the issues were not litigated or decided in the earlier adjudication of the subject claim or cause of action. Id. at 53, 85 P.3d at 160 (citations omitted).

Collateral estoppel[24] may preclude the relitigation of a fact or issue that was previously determined in a prior action on a different claim or cause of action between the same parties or their privies. Collateral estoppel only applies, however, if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment. See Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 264, 172 P.3d 983, 1008 (2007) (citing Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999)). Thus, the test for collateral estoppel has four elements: (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment. Id.

The party asserting either res judicata or collateral estoppel has the burden of establishing each of the applicable elements. Bremer, 104 Hawai'i at 54, 85 P.3d at 161.

Therefore, with respect to res judicata, we must first determine whether the claim or cause of action in the present case is identical to the one decided in the prior adjudication.

---

[24] Collateral estoppel is frequently, and perhaps confusingly, referred to as an aspect of res judicata. See, e.g., Omerod, 116 Hawai'i at 263-64, 172 P.3d at 1007-08; Keahole Def. Coal., Inc. v. Bd. of Land & Nat. Res., 110 Hawai'i 419, 429, 134 P.3d 585, 595 (2006) (citations omitted).

As previously described, the Everson case was an agency action initiated with the EUTF Petition, which sought a declaratory ruling as to the four questions quoted in Section II.B. above. Appellants, in essence, request that this court disregard the scope of those claims for declaratory relief, and instead rely on their expansive "Statement of the Case" presented *on appeal* to the Everson Circuit Court. As the Circuit Court below concluded, the claims raised before the EUTF concerned HRS Chapter 87A and article XVI, section 2, and did not address the question of parity of benefits under HRS Chapter 87.

Although somewhat unclear, it appears that the Appellants contend that *res judicata* applies to their second point, *i.e.*, that the Circuit Court's ruling in Everson precludes relitigation of whether the EUTF Board's decision that it can provide inferior health benefits to retirees violates the Non-Impairment Clause. The "constitutional ruling" by the Circuit Court in Everson, with which this court agreed, was that Hawai'i's Non-Impairment Clause applies to retirees' accrued health benefits. See Everson, 122 Hawai'i at 405, 417, 228 P.3d at 285, 297. The "statutory ruling" by the Circuit Court in Everson, which this court rejected on appeal, was that HRS § 87A-23 requires parity of benefits between active workers and retirees. Id. at 405-06, 421, 228 P.3d at 285-86, 301. Notwithstanding a couple of extraneous references to HRS Chapter 87, we decline to read the Circuit Court's ruling in Everson more broadly than that. *Res judicata* does not apply.

45

It also appears that Appellants contend that collateral estoppel precludes a determination in this case of "whether there was parity between EUTF health benefits to Active Workers and Retirees." The entirety of the Everson Circuit Court's factual determination on this issue is contained in the fifth paragraph of its July 23, 2008 Decision and Order, which states:

> 5. Having rejected the Board's legal analysis, this Court is left to consider whether the differences in retiree benefits nonetheless reasonably approximate those of active workers. The following exemplify benefits that are not reasonably approximate in violation of state law:
>
> > $2,000 maximum dental benefit versus $1,000
> > 80% versus 60% coverage for endodontic treatment
> > 90% radiation therapy coverage versus 80% outpatient therapy after paying annual deductible

Although the three examples of differences between retiree benefits and active employee benefits, which were also noted by the Circuit Court in this case, do not appear to be disputed, we reject Appellants' contention that, pursuant to the doctrine of collateral estoppel, they have any material preclusive effect in this case.

D.    The State's Cross-Appeal

1.    HRS § 87-22(b) (repealed)

As noted above, the State raises two issues on cross-appeal, the first of which contends that the Circuit Court erred in concluding:

> Under the PEHF, the law required that health benefits had to be "equally available to all employee-beneficiaries and dependent-beneficiaries selecting the [health] plan regardless of age.["] HRS § 87-22(b) [(Supp. 2000)]. The term "employee-beneficiary" included active and retired employees. Thus, on its face and by definition, HRS

§ 87-22(b) required that the same health benefits had to be equally available to all employees, active and retired alike.

In a footnote, the Circuit Court added that:

The term "employee-beneficiary" was defined to include "an employee" and the term "employee" was defined as "an employee or officer of the state or county government or the legislature," including, "a retired member of the employees retirement system[.]" HRS § 87-1(5)(A)(v) and (6). Thus, an "employee-beneficiary" included active and retired government employees.

We reject the State's exclusive focus on the "regardless of age" clause, which ignores the inclusion of "all employee-beneficiaries" and the plain language of HRS § 87-1, which defined employees and employee-beneficiaries to include active workers and retirees alike. See also Everson, 122 Hawai'i at 420-21, 228 P.3d at 300-01 (noting that the 2001 amendments to the HRS included removal of the language that "required the Board of the EUTF to provide health benefits to retirees that are 'reasonably approximate' to those benefits provided to active employees").

This conclusion appears to be consistent with the Legislature's understanding of HRS § 87-22, as evidenced by the conference committee report discussing the 2001 amendment removing the "equally available" language from HRS § 87-22(b):

[Y]our Committee intends to address the issue of spiraling costs by . . . allowing the Public Employees Health Fund to craft health benefits plans within the employer's fiscal limitations. This amended measure expressly provides the Public Employees Health Fund with greater flexibility to, among other things, determine the types of plans, the design of plans, and the delivery of plan services.

    Upon further consideration and based on this intent, your Committee on Conference has amended the measure by

> . . . [a]mend[ing] section 87-22,[25] Hawaii Revised Statutes, relating to the determination of health benefits plans, by providing the Health Fund with the authority to design health benefits plans for all beneficiaries of the Health Fund. . . .
>
> . . . .
>
> Your Committee on Conference believes that the amended measure will . . . result in better, more well-suited, health benefits plans for each beneficiary of the Public Employees Health Fund.

Conf. Comm. Rep. No. 139, in 2001 House Journal, at 1105. Thus, the committee posits that removing the "equally available" language would permit the Health Fund to design plans that are "well-suited" to "each beneficiary." Id. This supports the interpretation that the pre-amendment language was removed because it barred the Health Fund from offering different health benefits plans to active employees and retirees.

Accordingly, we hold that the Circuit Court did not err in interpreting HRS § 87-22(b), prior to the 2001 amendment. The State's argument, that HRS § 87-22(b)'s "all employee-beneficiaries . . . regardless of age" provision should be read solely to protect against age discrimination, is inconsistent with this conclusion.

### 2.    The Circuit Court's Factual Determinations

Finally, the State argues that it established that active employee and retiree health plans offer substantially equivalent health benefits, or at least there was a genuine issue of material fact on this issue. As stated above, we agree with

---

[25]    HRS § 87-22 is just one of several sections amended here. Conf. Comm. Rep. No. 139, S.B. No. 1046.

the latter proposition. The parties each presented substantial evidence in the form of expert opinions and supporting exhibits sufficient to create genuine issues of material fact, such that it is necessary to vacate the Circuit Court's factual findings and remand this case for further proceedings.

VI.   CONCLUSION

For these reasons, the Circuit Court's January 30, 2015 Judgment is affirmed in part, vacated in part, and this case is remanded for further proceedings consistent with this Opinion.

Deirdre Marie-Iha and
Donna H. Kalama
for petitioners

Paul Alston
Maren L. Calvert
John Rhee and
Charles K.Y. Khim
for respondents

Mauna Kea Trask and
Adam P. Roversi
for respondent
County of Kauaʻi

Donna Y.L. Leong and
John S. Mukai
for respondent
City and County of Honolulu

Patrick K. Wong and
Richard B. Rost
for respondent
County of Maui

Molly A. Stebbins
Melody Parker and
Laureen L. Martin
for respondent
County of Hawaiʻi